2011 OK CIV APP 71

Robert J. "Bob" BARTON; Robert J. "Bob" Barton, Trustee of the Robert J. "Bob" Barton Revocable Trust, Dated September 23, 1992; House of Realty, Inc.; Pamela L. Barton–Stober; Sharlett R. Madison; Jeffrey C. Tackett; Harlan Drake; Phillis Casey; Larry Phillips; Iris Jones; Diane Frith; Richard Spriggs; Richard Spriggs, L.L.C.; Arthur Lewis; William Klukoske; and Virginia Gill, Plaintiffs/Appellants,

v.

CITY OF MIDWEST CITY; and Midwest City Memorial Hospital Authority, Defendants/Appellees.

No. 108,522.

Court of Civil Appeals of Oklahoma, Division No. 4.

March 1, 2011.

Certiorari Denied May 16, 2011.

James Dan Batchelor, John C. McMurry, Emily K. Pomeroy, The Center for Economic Development Law, Oklahoma City, Oklahoma, and Ambre C. Gooch, Collins, Zorn & Wagner, P.C., Oklahoma City, Oklahoma, for Defendants/Appellees.

KEITH RAPP, Judge.

¶ 1 The plaintiffs, Robert J. "Bob" Barton (Barton); Robert J. "Bob" Barton, Trustee of the Robert J. "Bob" Barton Revocable Trust, dated September 23, 1992 (Barton Trust); House of Realty, Inc. (HRI); and collectively the following "Tenants", Pamela L. Barton Stober, Sharlett R. Madison, Jeffrey C. Tackett, Harlan Drake, Phillis Casey, Larry Phillips, Iris Jones, Diane Frith, Richard Spriggs, Richard Sprigs L.L.C., Arthur Lewis, William Klukoske, and Virginia Gill, appeal an Order that dismissed their action against City of Midwest City (City) and Midwest City Memorial Hospital Authority (Hospital Authority). This appeal proceeds under the provisions of Okla. Sup.Ct. Rule 1.36, 12 O.S. Supp.2010, ch. 15, app. 1.

## BACKGROUND

¶ 2 This litigation arises from the events occurring as a result of actions taken by City and Hospital Authority to acquire, for an economic development project, by eminent domain real property owned by Barton Trust (referred to as the Marshall Tract) and by HRI (referred to as the Air Depot Tract). The facts and history are not in dispute. The litigation history, involving the landowners and City and Hospital Authority is set out, along with a summation of two prior holdings, in *City of Midwest City et al. v. House of Realty, Inc.*, 2008 OK 28, 198 P.3d 886 (*Realty III*).[1]

¶ 3 In *Realty I*, City had filed suit to condemn both Tracts and a challenge was made to the right to condemn under the authority asserted by City. On appeal, the Supreme Court held that City did not possess authority to exercise its eminent domain powers to remove blighted property for pur-

Terry Guy Shipley, Norman, Oklahoma and Stanley M. Ward, Woodrow K. Glass, Scott F. Brockman, Ward & Glass, L.L.P., Norman, Oklahoma, for Plaintiffs/Appellants.

---

1. The two prior appeals are reported as *City of Midwest City v. House of Realty, Inc.*, 2004 OK 56, 100 P.3d 678 (*Realty I*) and *House of Realty, Inc. v. City of Midwest City*, 2004 OK 97, 109 P.3d 314 (*Realty II*).

poses of the Local Development Act, 62 O.S. 2001 §§ 850 et seq., when the municipality did not comply with specific eminent domain statutes for the removal of blighted property and economic redevelopment by municipalities and public trusts. The Mandate issued on November 10, 2004.

¶ 4 However, in April 2004, the City evicted the tenants, took possession of the property and razed the structures. HRI's effort to stay the action was denied by the trial court and the Supreme Court.

¶ 5 *Realty II* involved an appeal by the landowners from a judgment in a proceeding where they sought injunctive and declaratory relief against the City and Hospital Authority. Landowners sought an injunction to stop the eminent domain proceedings and declaratory relief on issues involving the Hospital Authority. The Hospital Authority, a public trust, is the source of funds for the economic development project. The Court agreed with City and Hospital Authority that the injunctive relief was moot because of *Realty I*. In addition, a different entity was now engaged in the eminent domain action along with the City. The balance of the Opinion dealt with what the Hospital Authority could and could not do with its funds.

¶ 6 *Realty III* was an appeal where the Court decided three issues relating to whether City had acted lawfully in connection with its approval of an urban renewal plan and determinations of blighted areas. The Court ruled that City had acted lawfully and in substantial compliance with governing statutes. The significance of the plan adoption and blight determinations is that such action provided the legal authority for eminent domain separately from the Local Development Act.[2]

¶ 7 In *Realty III*, the Court reviewed the chronological history of City's actions. The initial blight determinations were made in May of 2002, but pursuant to a different statute, the Local Redevelopment Act, which did not provide for eminent domain as determined in *Realty I*. The Court further recited that City did not renew its eminent domain proceedings until after it had approved the urban renewal plan and reconfirmed the findings of blight, which process was completed by October 2004.[3]

¶ 8 In the case now under review, the plaintiffs filed this lawsuit based upon the action taken by City in April 2004, when the tenants were evicted, possession was taken and the structures razed. The petition lists seven counts. The first two counts seek a declaratory judgment to adjudicate whether plaintiffs have an action under Article II, §§ 7, 23 of the Oklahoma Constitution for the taking of the property in April 2004. The third count asks for declaratory judgment that plaintiffs may pursue inverse condemnation without conceding that City or Authority had the right to condemn. The fourth count seeks damages under any of the preceding theories for the evictions and demolition of the structures. The last three counts ask for damages under 42 U.S.C. § 1983 (1996), for violation of constitutional rights.[4]

¶ 9 Citing 12 O.S.2001, § 2012(B)(6), the defendants moved to dismiss the petition resulting in this appeal. By agreement, the court records in all of the parties' cases were submitted to the trial court.

¶ 10 As ground to dismiss the first four counts, the defendants alleged that plaintiffs had not pled compliance with the Oklahoma Governmental Tort Claims Act. Plaintiffs do not dispute that they have not filed a claim under the Act, but assert it was not required.

¶ 11 Next, the defendants asserted that the Section 1983 claims could not be maintained because there is an adequate remedy under state law in the form of inverse or direct condemnation. The plaintiffs' response essentially concedes defendants' argument and asks the trial court to abate the Section 1983 claims pending a determination of whether

---

2. *Realty III*, 2008 OK 28 ¶ 27, 198 P.3d at 898.

3. *Realty III*, 2008 OK 28 at ¶ 25, 198 P.3d at 898. The eminent domain proceeding initiated in 2004 reflects City and Midwest City Urban Renewal Authority, a Public Body Corporate, as plaintiffs. Record, Tab 20.

4. A federal court case had been filed seeking damages for violations of civil rights. The court there dismissed the case.

they may recover under their alternate theories.

¶ 12 The defendants then replied and raised a new theory for dismissal. They argued that the plaintiffs would be fully compensated by the renewed condemnation case filed by City and the Midwest City Urban Renewal Authority. The Commissioners in the November 23, 2004 condemnation case were specifically instructed that they were not to consider any change in value by reason of any demolition of the buildings on the property prior to October 12, 2004. The Commissioners were instructed to value the property as of October 12, 2004.[5]

¶ 13 Then, defendants filed a supplement to their dismissal motion. The City, along with the Midwest City Urban Renewal Authority, had filed another condemnation action in November of 2004, and *Realty III* held that the City had proceeded lawfully. Therefore, the defendants argued that *Realty III* and its ruling approving the City's actions regarding its urban renewal plan and blight determination resulted in authorization separate from the Local Development Act to proceed by eminent domain, which Act did not provide condemnation authority pursuant to *Realty I*. The argument continues on to conclude that the City's right to condemn, as confirmed by *Realty III*, defeats the premise of the lawsuit. This premise is that the plaintiffs were damaged when the City evicted the tenants, took possession of the property and razed the structures without authority to condemn.

¶ 14 The trial court sustained the defendants' motion to dismiss. The plaintiffs appeal.

### STANDARD OF REVIEW

¶ 15 The initial motion to dismiss cited the "failure to state a claim" provision in 12 O.S. Supp.2010, § 2012(B)(6), which would invoke a *de novo* review to ascertain whether the petition, including its exhibits, is legally sufficient. *Indiana Nat'l Bank v. State Dep't of Human Services*, 1994 OK 98, ¶ 2, 880 P.2d 371, 375. However, as a consequence of further submissions, the cause acquired elements of: (1) lack of subject matter jurisdiction under Section 2012(B)(1) for not filing a governmental tort claim; (2) another action pending for the same claim under Section 2012(B)(8); and, (3) affirmative defenses of res judicata (issue and claim preclusion) under 12 O.S. Supp.2010, § 2008(C)(16) and (20).

■ ¶ 16 The Section 2012(B)(1) and (8) components present questions of law involving undisputed facts. The appellate court has the plenary, independent, and nondeferential authority to reexamine a trial court's legal rulings. *Neil Acquisition, L.L.C. v. Wingrod Investment Corp.*, 1996 OK 125, 932 P.2d 1100 n. 1.

¶ 17 The trial court considered materials outside the pleadings thereby converting the 2012(B)(6) motion to one for summary judgment. 12 O.S. Supp.2010 § 2012(B). Summary judgment is properly granted "when the pleadings, affidavits, depositions, admissions or other evidentiary materials establish that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law" *Davis v. Leitner*, 1989 OK 146, ¶ 9, 782 P.2d 924, 926. When reviewing the grant of summary judgment, we must view all inferences and conclusions to be drawn from the evidentiary materials in a light most favorable to the party opposing the motion. *Id.*

¶ 18 Although a trial court considers factual matters when deciding whether summary judgment is appropriate, its ultimate decision

---

5. Instructions To Commissioners, ¶ 7. Record, Tab 7–1. The paragraph reads:

    The award of compensation for property taken for a project as of the point in time the Midwest City Urban Renewal Authority became involved (October 12, 2004) shall not be increased nor decreased by reason of any clearance, reconstruction, or proposed assembly, clearance or reconstruction in the project area after October 12, 2004 by Midwest City Urban Renewal Authority. However, any change in value by reason of any clearance, reconstruction, or proposed assembly, clearance or reconstruction in the project area, *but not including demolition of the buildings on the Property, prior to October 12, 2004 by the City of Midwest City and the Midwest City Memorial Hospital Authority* may be considered by you. (Emphasis added.)

is purely legal: "whether one party is entitled to judgment as a matter of law because there are no material disputed factual questions." *Carmichael v. Beller,* 1996 OK 48, ¶ 2, 914 P.2d 1051, 1053.

¶ 19 One who defends against a claim and who does not bear the burden of proof is not required to negate the plaintiff's claims or theories in order to prevail on motion for summary judgment. When a defendant moves for summary judgment without relying upon an affirmative defense, the defendant must show that: 1) no substantial factual controversy exists as to at least one fact essential to plaintiff's theory of the cause· of action; and, 2) the fact is in defendant's favor. Once a defendant has introduced evidentiary materials to establish these points, the plaintiff then has the burden of showing that evidence is available which justifies a trial of the issue. *Akin v. Missouri Pacific Railroad Co.,* 1998 OK 102, ¶ 8, 977 P.2d 1040, 1044; *Stephens v. Yamaha Motor Co., Ltd. Japan,* 1981 OK 42, ¶ 11, 627 P.2d 439, 441; *Runyon v. Reid,* 1973 OK 25, ¶¶ 12–13, 510 P.2d 943, 946. On the other hand, when the defendant relies upon an affirmative defense, as here with claim or issue preclusion, then the defendant, as the party with the burden of proof, must meet the same standards as a plaintiff movant. *Akin,* 1998 OK 102 at ¶ 9, 977 P.2d at 1044.

¶ 20 Therefore, the standard of review on appeal in this matter is *de novo.*

## ANALYSIS AND REVIEW

¶ 21 The salient facts are:

— Prior to April 2004, the City and Authority commenced a condemnation without legal authority.

— In early April 2004, the City evicted tenants, took possession of the property and demolished structures on the property based upon the unauthorized condemnation, although the action was not stayed by the trial court or the Supreme Court.

— On November 23, 2004, the City, along with Midwest City Urban Renewal Author-

ity, commenced a new condemnation *and* had authority to do so under urban renewal statutes.

— The Commissioners in the November 23, 2004 condemnation case were specifically instructed that they were not to consider any change in value by reason of any demolition of the buildings on the property prior to October 12, 2004, by City and Hospital Authority. The Commissioners were instructed to value the property as of October 12, 2004.

¶ 22 Clearly, the plaintiffs may have been damaged as a result of the eviction and demolition of the structures. However, the defendants assert that the undisputed failure of the plaintiffs to file a claim under the Oklahoma Governmental Tort Claims Act, 51 O.S. Supp.2010, §§ 151–172, defeats their claim for damages for the April 2004 episode.[6]

¶ 23 The Act applies to tort liability. A tort is defined as:

"Tort" means a legal wrong, independent of contract, involving violation of a duty imposed by general law or otherwise, resulting in a loss to any person, association or corporation as the proximate result of an act or omission of a political subdivision or the state or an employee acting within the scope of employment.

51 O.S. Supp.2010, § 152(14).[7]

¶ 24 Plaintiffs' cause of action grounded on inverse condemnation is not governed by the Governmental Tort Claims Act. The action is a special statutory proceeding for the purpose of ascertaining the compensation to be paid for appropriated or damaged property. *Material Serv. Corp. v. Rogers County Commisioners,* 2006 OK CIV APP 52, ¶ 7, 136 P.3d 1063, 1065.

¶ 25 Article 2, § 24 of the Oklahoma Constitution provides in relevant part: "Private property shall not be taken or damaged for public use without just compensation. Just compensation shall mean the value of the property taken, and in addition, any injury to any part of the property not taken." "[T]he

---

6. Defendants do not claim immunity.

7. Section 152 has been amended but the definition has not been changed.

required payment for 'just compensation' is not limited to property 'taken,' but extends also to property 'damaged.' " *Williams v. State ex rel. Dep't of Transp.*, 2000 OK CIV APP 19, ¶ 14, 998 P.2d 1245, 1249.

¶ 26 Plaintiffs' petition and briefs refer to Article 2, Section 23 of the Oklahoma Constitution. This section reads:

> No private property shall be taken or damaged for private use, with or without compensation, unless by consent of the owner, except for private ways of necessity, or for drains and ditches across lands of others for agricultural, mining, or sanitary purposes, in such manner as may be prescribed by law.

Thus, in relevant parts, Section 23 and 24 are identical. Moreover, no issue has been presented in this proceeding about whether the taking here is for public or private use.

¶ 27 Plaintiffs' other state law claims are grounded in tort and are barred by application of the Governmental Tort Claims Act. Plaintiffs' Section 1983 claims must also be dismissed as premature because of the state law remedy under inverse condemnation. *See Williamson Co. Reg'l Planning Comm'n v. Hamilton Bank*, 473 U.S. 172, 105 S.Ct. 3108, 87 L.Ed.2d 126 (1985).

¶ 28 Because the present case raises the issue of whether a taking or damage occurred as a result of the April 2004 episode so as to expose defendants to liability for failing to justly compensate plaintiffs pursuant to Art. 2, § 23 and § 24, this Court holds that the plaintiffs have stated a cause of action under the theory of inverse condemnation. In addition there are a number of issues of fact pertaining to the amount of compensation due. Thus, summary judgment was improperly granted at this stage of the proceedings as to this claim.[8]

¶ 29 Therefore, the judgment of the trial court dismissing plaintiffs' claim grounded on inverse condemnation is reversed. The dismissal of all other state law claims is affirmed. The dismissal of the civil rights claims is affirmed on the ground that such claims are premature. The cause is remanded to the trial court for further proceedings.

¶ 30 AFFIRMED IN PART AND REVERSED IN PART AND REMANDED FOR FURTHER PROCEEDINGS.

GABBARD, V.C.J., concurs, and GOODMAN, P.J., concurs in result.

---

**8.** The measure of damages for the April 2004 taking is a task, in the first instance, for the trial court to decide. Appellate courts do not make initial determinations of disputed law or fact issues. *Bivins v. State ex rel. Okla. Mem. Hosp.,* 1996 OK 5, ¶ 19, 917 P.2d 456, 464. However, this Court notes that the property owners are not entitled to be compensated for a "taking" (as opposed to damages) in April 2004, and another "taking" in October 2004, for the same property.