2013 OK 6

**CITY OF CHOCTAW, Plaintiff/Appellee,**

v.

**OKLAHOMA MUNICIPAL ASSURANCE GROUP, Defendant/Appellant.**

No. 109,288.

Supreme Court of Oklahoma.

Jan. 22, 2013.

Rehearing Denied April 29, 2013.

Rex Travis, Paul Kouri, Oklahoma City, Oklahoma, for plaintiff/appellee.

Andrew W. Lester, Carrie L. Williams, Lester, Loving & Davies, P.C., Edmond, Oklahoma, and David W. Kirk, Lytle Soule & Curlee, P.C., Oklahoma City, Oklahoma, for defendant/appellant.

WINCHESTER, J.

¶ 1 In a dispute over insurance coverage between the plaintiff/appellee, City of Choctaw, and its insurer, Oklahoma Municipal Assurance Group (OMAG), defendant/appellant, the trial court granted a motion for summary judgment for Choctaw. Both in the trial court and on appeal, the city argued that OMAG should cover an inverse condemnation judgment entered against the city in a suit brought by a landowner, even though the city admits it obtained coverage from OMAG for liability imposed under the Governmental Tort Claims Act, 51 O.S.2011, §§ 151–172 (GTCA).

¶ 2 The court also found that OMAG was estopped to assert Choctaw was not covered by its policy with OMAG, and that the policy was unambiguous as to the amount of coverage, which was $1,000,000. The court entered judgment in favor of Choctaw for that amount plus costs and attorney fees, and prejudgment interest at fifteen percent per annum pursuant to 36 O.S.2011, § 3629(B) from August 15, 2008, the date the claim should have been paid, until it is paid. We hold the

trial court erred in granting summary judgment to Choctaw.

¶3 Two cities, Choctaw and The Village, formed OMAG in 1977, pursuant to the Interlocal Cooperation Act, now codified at 74 O.S.2011, §§ 1001–1008. That act allows municipalities to insure against tort liability by entering into cooperative agreements. OMAG reports it currently has over 450 municipalities that have pooled their risks. Its governing board consists of OMAG members, which determine the terms of the Plan.

¶4 On November 28, 2005, JORCO II, L.L.C. sued Choctaw and several Choctaw officials over JORCO's plan to build housing in that city, and its failure to approve the zoning of the property. OMAG assumed the defense, issuing letters to Choctaw reserving its rights. The Original Record indicates the case was removed to federal court on December 28, 2005, and remanded by the United States Court for the Western District on May 3, 2006.

¶5 OMAG's letter of January 6, 2006, informs Choctaw that the declarations page of the Plan provides a $1,000,000 liability limit for all covered losses to any person. The letter also provides: "No action by the Group, our claims adjusters or attorneys retained by the Group, should be construed by the Municipality or the individual defendants as a waiver of the rights of the Group to deny coverage or withdraw from the case." After the federal case had been remanded, OMAG sent another letter on July 28, 2006, entitled SUPPLEMENTAL RESERVATION OF RIGHTS. It informs Choctaw that the plaintiff (JORCO) had filed an amended petition that did not contain any federal civil rights law causes of action and brings all the previous causes of action under state law. The letter continues, "Now that there are no federal civil rights law causes of action, the Plan provides coverage to the extent that a municipality may be liable under the Governmental Tort Claims Act."

¶6 The amended petition to which the OMAG reservation letter refers was filed on July 7, 2006. After a motion by Choctaw to dismiss was denied on August 18, 2006, the city filed an answer to the amended petition on September 5, 2006. A motion for summary judgment by the city was denied on May 11, 2007, a pre-trial conference was held on May 30, 2007, and a motion to settle the pre-trial conference order was filed on October 10, 2007, with a hearing set for November 9, 2007. That hearing was struck as moot on that date.

¶7 On October 24, 2007, OMAG sent a certified letter to Choctaw. The letter, also entitled SUPPLEMENTAL RESERVATION OF RIGHTS, references OMAG's previous reservation of rights letters to Choctaw and the previous notice that the plaintiff had filed an amended petition. The letter additionally informs the city that the fifth cause of action of the amended petition comprises an allegation from JORCO that it had its property taken by inverse condemnation as a result of a conspiracy among the defendants. The letter then refers the city to an exclusion in the General Provisions of the Plan and that OMAG had no obligation to pay, nor did it have any obligation to defend any suit against a plan member alleging damages on account of "Loss arising out of or in any way in connection with the operation of the principles of eminent domain, condemnation proceeding, reverse or inverse condemnation, by whatever name called, ... as a result of a cause of action filed pursuant to state or federal law."[1] OMAG then informed Choctaw that based on the exclusion, "the Group contends it is not obligated to pay any claim or judgment that might be rendered against the City for inverse condemnation." The letter explains OMAG is giving this notice to the city in the event it desired to retain separate counsel. On November 20, 2007, Choctaw filed a motion to stay, which the court heard the next day. On that day two attorneys entered their appearances as counsel for the City of Choctaw. The court denied the stay.

¶8 The trial commenced on November 26, 2007, and after several days the jury ultimately found in favor of JORCO against Choctaw on an inverse condemnation claim, and awarded $1,700,000. A Journal Entry of Judgment was finally signed and filed on

---

1. Record on Accelerated Appeal, Tab 3, Exhibit 4, ¶11.

February 5, 2008, and Choctaw appealed. It subsequently moved to dismiss the appeal, which was granted, and a release and satisfaction was filed on June 30, 2009. The City of Choctaw's appellate brief informs this Court that the case was settled at an Appellate Settlement Conference for $1,700,000, even though costs and interest increased the judgment to more than $2,000,000. OMAG agreed to pay $250,000 of that agreed settlement.

¶ 9 On March 25, 2008, Choctaw filed a petition seeking a declaration that it had coverage under the insurance policies issued by OMAG, pursuant to 12 O.S.2011, § 1651.[2]

 ¶ 10 The city asserts OMAG is subject to the general rules of liability imposed on all insurers. In OMAG's answers to interrogatories it concedes that it is considered an "insurer"[3] due to the application of 36 O.S.2011, § 607.1.[4] More particularly, the city argues that OMAG is estopped to deny coverage of the inverse condemnation claim, and therefore should pay the inverse condemnation judgment because OMAG undertook defense of the landowner's suit, which involved both GTCA claims and the inverse condemnation claim.

¶ 11 The chief problem with the city's attempt to use § 607.1 and OMAG's admission as a basis for coverage by estoppel lies in the fact that the provision does not make OMAG an "insurer" for all purposes. The statute makes OMAG an "insurer" only for the "kinds of insurance that the entity transacts."

 ¶ 12 The cities that formed OMAG created it to operate pursuant to 51 O.S.2011, § 167, most specifically, subsection C. That statute provides in pertinent part:

"C. Notwithstanding any other provision of law, two or more municipalities or public agencies who are affiliated in an insurance program which was originated prior to January 1, 2006, by interlocal agreement made pursuant to Section 1001 et seq. of Title 74 of the Oklahoma Statutes, may provide insurance for any purpose by any one or more of the methods specified in this section. The pooling of self-insured reserves, claims or losses among governments as authorized in this act shall not be construed to be transacting insurance nor otherwise subject to the provisions of the laws of this state regulating insurance or insurance companies."

This section applies to "pooling of self-insured reserves, claims or losses among governments as authorized in this act," and the qualifying language "as authorized in this act" refers to "self-insured reserves, claims or losses" under the Governmental Tort Claims Act. "[A] cause of action grounded on inverse condemnation is not governed by the Governmental Tort Claims Act." It is "a special statutory proceeding for the purpose of ascertaining the compensation to be paid for appropriated or damaged property." *Barton v. City of Midwest City*, 2011 OK CIV APP 71, ¶ 24, 257 P.3d 422, 426. Coverage of

2. Title 12 O.S.2011, § 1651 provides:
"District courts may, in cases of actual controversy, determine rights, status, or other legal relations, including but not limited to a determination of the construction or validity of any foreign judgment or decree, deed, contract, trust, or other instrument or agreement or of any statute, municipal ordinance, or other governmental regulation, whether or not other relief is or could be claimed, except that no declaration shall be made concerning liability or nonliability for damages on account of alleged tortious injuries to persons or to property either before or after judgment or for compensation alleged to be due under workers' compensation laws for injuries to persons. The determination may be made either before or after there has been a breach of any legal duty or obligation, and it may be either affirmative or negative in form and effect; provided however, that a court may refuse to make a

determination where the judgment, if rendered, would not terminate the controversy, or some part thereof, giving rise to the proceeding."

3. Record on Accelerated Appeal, Tab 5, Exhibit 2, Answer to Interrogatory No. 1.

4. Title 36 O.S.2011, § 607.1 provides: "An entity organized pursuant to the Interlocal Cooperation Act, Section 1001 et seq. of Title 74 of the Oklahoma Statutes, for the purpose of transacting insurance shall be considered an insurer at such time that the entity has within a twelve-month period received aggregate premiums of One Million Dollars ($1,000,000.00) for all kinds of insurance that the entity transacts. Such an entity shall be eligible to qualify for and hold a certificate of authority to transact insurance in this state."

inverse condemnation is not one of the "kinds of insurance that the entity [OMAG] transacts." 36 O.S.2011, § 607.1.

¶ 13 As we previously observed, OMAG gave the city notice prior to the trial of the landowner's suit that OMAG did not cover inverse condemnation and that it would not defend the city on this claim. The GTCA expressly provides, in pertinent part, that

"If a policy or contract of liability insurance covering the state or political subdivision or its employees is applicable, the terms of the policy govern the rights and obligations of the state or political subdivision and the insurer with respect to the investigation, settlement, payment and defense of claims or suits against the state or political subdivision or its employees covered by the policy."

51 O.S.2011, § 158(C). An examination of the record reveals that OMAG properly limited its defense of the landowner's suit to claims that implicated the city's liability under the GTCA, notified the city of this fact, and did not mislead the city concerning the scope of OMAG's coverage or defense.

¶ 14 The summary judgment record filed with this Court discloses neither a legal nor factual basis for applying any theory of estoppel to make OMAG liable for the inverse condemnation judgment. Accordingly, we reverse the summary judgment in favor of the city, and remand with directions to enter summary judgment in favor of OMAG.

### JUDGMENT REVERSED AND REMANDED WITH DIRECTIONS.

CONCUR: REIF, V.C.J., KAUGER, WINCHESTER, EDMONDSON, TAYLOR, COMBS, GURICH, JJ.

CONCUR IN PART, DISSENT IN PART: COLBERT, C.J., WATT, J.

1. *Robinson v. Texhoma Limestone, Inc.*, 2004 OK 50, ¶ 10, 100 P.3d 673. See also, *Barringer v. Baptist Healthcare of Oklahoma*, 2001 OK 29, ¶ 26, 22 P.3d 695.

WATT, J., with whom COLBERT, C.J. joins, concurring in part and dissenting in part:

¶ 1 I concur in the majority opinion only to the extent that it determines the trial court erred in granting summary judgment to the plaintiff/appellee, City of Choctaw (Choctaw). Nevertheless, I dissent to its reversal of course and remand of the cause for the sole purpose of entering judgment in favor of the defendant/appellant, Oklahoma Municipal Assurance Group (OMAG), on an issue of fact where there are conflicting **material facts which must be addressed by the trier of fact on a level playing field.**

¶ 2 The majority orders entrance of summary judgment in favor of OMAG based on OMAG's having limited its defense to the landowner's suit and its failure to have "misled" Choctaw concerning the scope of its coverage or defense. In so doing, it ignores other, competing facts which weigh in favor of Choctaw, *i.e.* OMAG's: having undertaken defense of the cause; its indication that the elimination of federal civil rights causes of action would allow coverage to the municipality at least to some extent; participation in the settlement conference in which it agreed to pay $250,000.00; and it's concession that it should be considered an insurer.

¶ 3 Questions of waiver and estoppel are ordinarily ones of fact.[1] Summary judgment is proper only when the pleadings, affidavits, depositions, admissions, or other evidentiary material establish that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law.[2] Undoubtedly, there are disputed material facts in this cause. It is inappropriate for this Court to usurp the duty of the trier of fact to consider those facts and determine whether OMAG may be estopped to deny coverage.

¶ 4 The trial court erred when it entered judgment in favor of Choctaw in the face of disputed material facts. The majority does so here as it places itself in the shoes of the

2. *Sullivan v. Buckhorn*, 2005 OK 41, ¶ 36, 119 P.3d 192; *Bogart v. CapRock Communications Corp.*, 2003 OK 38, ¶ 20, 69 P.3d 266; *Prichard v. City of Oklahoma City*, 1999 OK 5, ¶ 19, 975 P.2d 914.

fact finders. I will do neither and so concur in part and dissent in part to the majority opinion.