OSCN Found Document:BD. OF CTY. COMMISSIONERS v. ASSOC. OF CTY. COMMISSIONERS OF OKLA. SELF-INSUR. GROUP

 
 
 

 
 
 
 
 
 
 
 

 


 
 
 
 
 
 


 
 OSCN navigation


 
 
 Home

 
 Courts

 
 Court Dockets

 
 Legal Research

 
 Calendar

 
 Help
 
 





 
 
 
 Previous Case

 
 Top Of Index

 
 This Point in Index

 
 Citationize

 
 Next Case

 
 Print Only
 
 
 
 
 

 
 
 
 BD. OF CTY. COMMISSIONERS v. ASSOC. OF CTY. COMMISSIONERS OF OKLA. SELF-INSUR. GROUP
2014 OK 87
Case Number: 112208
Decided: 10/21/2014
THE SUPREME COURT OF THE STATE OF OKLAHOMA
Cite as: 2014 OK 87, __ P.3d __

 
NOTICE: THIS OPINION HAS NOT BEEN RELEASED FOR PUBLICATION. UNTIL RELEASED, IT IS SUBJECT TO REVISION OR WITHDRAWAL. 

BOARD OF COUNTY COMMISSIONERS OF DELAWARE COUNTY AND SHERIFF OF DELAWARE COUNTY, Plaintiffs/Appellees,
v.
ASSOCIATION OF COUNTY COMMISSIONERS OF OKLAHOMA SELF- INSURANCE GROUP, Defendant/Appellant.

CERTIORARI REVIEW OF A CERTIFIED INTERLOCUTORY ORDER
FROM THE DISTRICT COURT OF ROGERS COUNTY

¶0 After settling a federal lawsuit brought by plaintiffs for $13,500,000.00, the sheriff of Delaware County and the County Commissioners demanded that the Association of County Commissioners of Oklahoma Self Insurance Group indemnify Delaware County for that amount. The insurance group agreed to contribute $1,000,000.00, less the defense costs already incurred, which amount was the per occurrence limit. Delaware County filed a lawsuit for breach of contract, and subsequently moved to amend its petition to add a bad faith claim, after the lawsuit had been transferred to Rogers County. The trial court judge, Hon. Dynda R. Post, granted the motion and subsequently denied the insurance group's motion to dismiss the bad faith claim. The trial court certified for immediate interlocutory appeal the order denying that motion to dismiss.

CERTIORARI TO REVIEW CERTIFIED INTERLOCUTORY ORDER GRANTED;
DISTRICT COURT'S CERTIFIED INTERLOCUTORY ORDER REVERSED;
CAUSE REMANDED WITH INSTRUCTIONS.

Gerard F. Pignato, Clayton B. Bruner, PIGNATO, COOPER, KOLKER & ROBERSON, P.C., Oklahoma City, Oklahoma, for appellant.
Phil R. Richards, Randy Lewin, Jessica N. Battson, RICHARDS & CONNOR, Tulsa, Oklahoma, for appellees.

WINCHESTER, J.

¶1 This case is before this Court as a certified interlocutory order,[1] review of which we have granted. The questions that are presented involve whether the Association of County Commissioners of Oklahoma Self-Insurance Group (ACCO-SIG) is an insurer pursuant to 36 O.S.2011, § 607.1[2] and whether, pursuant to the Governmental Tort Claims Act, 51 O.S. §§ 151-172, that organization is immune from tort liability for a breach of the duty of good faith and fair dealing. We hold that under the statutes the organization is an insurance company for some purposes, but is a governmental entity immune from a tort claim for the breach of the duty of good faith and fair dealing.

I. BACKGROUND

¶2 ACCO-SIG is formed pursuant to the Interlocal Cooperation Act, 74 O.S., §§ 1001-1008, to pool self-insured reserves, claims and losses of its member counties, and provide property and liability protection plans to its participating members, which include 74 of Oklahoma's 77 counties. Delaware County (the county) is a participating member. On November 1, 2011, the county settled a lawsuit between it and fifteen plaintiffs who had sued the sheriff of Delaware County over allegations of sexual assault by employees of the county. The amount of the settlement was $13,500,000.00 plus interest.

¶3 ACCO-SIG agreed to contribute $1,000,000.00, less any defense costs it had already incurred, which amount was its per occurrence limit. The county filed a lawsuit on December 22, 2011, for breach of contract, claiming the contract required ACCO-SIG to indemnify the county for the entire settlement. After the lawsuit was transferred to Rogers County, the plaintiff/county moved to amend its petition to add a bad faith claim against ACCO-SIG. That group responded that the county failed to provide ACCO-SIG with adequate notice under the provisions of the GTCA, 51 O.S., §§ 151-172. It also claimed that the group was immune from the bad faith acts of its employees under the act. The district court granted the county's motion to amend. ACCO-SIG subsequently moved to dismiss the county's bad faith claim, which motion the district court denied.

¶4 Although we do not have the question before us, the county asserted in its argument that ACCO-SIG committed the tort by failing to find fifteen separate occurrences, which would expand the occurrence limits from the single occurrence limit of $1,000,000.00. Whether the occurrence is one or fifteen, we express no opinion on that issue.

II. IS ACCO-SIG AN INSURER?

¶5 This issue is answered in City of Choctaw v. Oklahoma Municipal Assurance Group, 2013 OK 6, 302 P.3d 1164. OMAG, like ACCO-SIG, was formed pursuant to the Interlocal Cooperation Act, 74 O.S.2011, §§ 1001-1008, for the purpose of insuring against tort liability by entering into cooperative agreements, and included a governing board consisting of OMAG members, which determined the terms of the Plan. City of Choctaw, 2013 OK 6, ¶ 3, 302 P.3d at 1165.

¶6 Like the case presently before us, the plaintiff in the City of Choctaw case attempted to use 36 O.S.2011, § 607.1 to argue that OMAG was subject to the general rules of liability imposed on all insurers.[3] City of Choctaw, 2013 OK 6, ¶ 10, 302 P.3d at 1166. This Court rejected that characterization. Regarding this issue, the Court held, "The statute makes OMAG an 'insurer' only for 'the kinds of insurance that the entity transacts.'" City of Choctaw, 2013 OK 6, ¶ 11, 302 P.3d at 1166. A governmental entity's cooperative insurance plan, which pools self-insured reserves, claims and losses of its member municipalities or counties, shares little in common with commercial enterprises that sell insurance for a profit to their shareholders. The relationship between these governmental entities is contractual in nature. The contracting parties have substantially more freedom to contract than an individual consumer dealing with a commercial for-profit insurance enterprise. All the contracting parties in a governmental cooperative insurance plan have equal interests in enforcing the contracts protecting the pooling of their resources.

¶7 The fact that OMAG was created to operate pursuant to 51 O.S.2011, § 167(C), and ACCO-SIG operates pursuant to 51 O.S.2011, § 169(C), makes no substantial difference because both statutes contain this sentence: "The pooling of self-insured reserves, claims or losses among governments as authorized in this act shall not be construed to be transacting insurance nor otherwise subject to the provisions of the laws of this state regulating insurance or insurance companies."

¶8 Like OMAG, ACCO-SIG is not transacting insurance, nor is it otherwise subject to the provisions of the laws of this state regulating insurance or insurance companies. The legislature has clearly spoken on this issue, and a reasonable rationale for such a rule is that with such voluntary governmental entities, the protections afforded members of the public with regards to private insurance is not necessary in the protections of municipalities and counties in this type of insurance plan.

¶9 We hold that ACCO-SIG, like OMAG, is not an insurer for all purposes. Although it clearly insures, ACCO-SIG is not subject to the general rules of liability imposed on all insurers.

III. IS ACCO-SIG PROTECTED BY THE GOVERNMENTAL TORT CLAIMS ACT?

¶10 The applicable law to answer whether ACCO-SIG is protected by the provisions of the Governmental Tort Claims Act (GTCA) is found within that act. Title 51 O.S.2011, § 152.1(A), provides: "The State of Oklahoma does hereby adopt the doctrine of sovereign immunity. The state, its political subdivisions, and all of their employees acting within the scope of their employment, whether performing governmental or proprietary functions, shall be immune from liability for torts." The GTCA provides exceptions to this general rule by waiving its immunity only "to the extent and in the manner provided in this act." 51 O.S.2011, § 152.1(B).

¶11 The state and its political subdivisions are granted immunity by the GTCA.The definition for "state" found in the GTCA is "the State of Oklahoma or any office, department, agency, authority, commission, board, institution, hospital, college, university, public trust created pursuant to Title 60 of the Oklahoma Statutes of which the State of Oklahoma is the beneficiary, or other instrumentality. . . ." 51 O.S.Supp.2014, § 152(14). Subsection 152(11) includes counties within the definition of "political subdivision." An "agency" is defined as "any board, commission, committee, department or other instrumentality or entity designated to act in behalf of the state or a political subdivision. . . ." 51 O.S.Supp.2014, § 152(2).

¶12 Is ACCO-SIG designated to act in behalf of the county? If so, it comes within the umbrella of protection of the GTCA. The phrase "on behalf of" can be defined as "in the interest of: as the representative of: for the benefit of:" [4] The facts as revealed to this Court support a legal conclusion that the insurance contracts from ACCO-SIG are executed in the interest of and for the benefit of the member counties, not for private citizens, not for private companies operating for profit, but solely for member counties. ACCO-SIG's sole reason for existence is to provide property and liability plans for its member counties. ACCO-SIG fits the definition of "agency" under the GTCA and therefore falls within its sovereign immunity protection.

¶13 Delaware County argues that if ACCO-SIG is protected, then insurance companies from the private sector that provide coverage for counties would also be protected. There are distinguishing characteristics here. The funds received by ACCO-SIG come from counties, which funds come from the payment of taxes to the sovereign. The policy behind sovereign immunity includes protection of its funds. Providing immunity from tort claims against the state and its political subdivisions, which includes counties and agencies, is the policy behind the GTCA. Companies whose business is to insure all qualified persons or businesses that apply for insurance coverage receive their premiums from the private sector, in addition to public entities. Their profits come from premiums and investments. They are not primarily organized to benefit governmental entities, but to provide a profit for their investors. Such insurance companies are not entitled to the protection of sovereign immunity.

¶14 In a discussion of sovereign immunity, the United States Court of Appeals for the Seventh Circuit articulated the central and foundational principle behind the concept of sovereign immunity, which is "the inherent right of the sovereign to be immune from private suit." Nelson v. La Crosse County District Attorney, 301 F.3d 820, 826 (7th Cir. 2002). We infer that the policy provided by the GTCA and the intent of the Oklahoma Legislature in its enactment of the GTCA was to protect this foundational principle by statute.

¶15 Therefore, ACCO-SIG is immune from liability for the tort of bad faith conduct in payment of claims because its employees are not acting within the scope of their employment if they are acting in bad faith. Scope of employment means: "performance by an employee acting in good faith within the duties of the employee's office. . . ." 51 O.S.Supp.2014, § 152(12). See, Fehring v. State Insurance Fund, 2001 OK 11, 19 P.3d 276. Accordingly, the trial court erred in denying ACCO-SIG's motion to dismiss Delaware County's bad faith claim. The trial court is instructed to grant the motion to dismiss that portion of Delaware County's claim against ACCO-SIG.

CERTIORARI TO REVIEW CERTIFIED INTERLOCUTORY ORDER GRANTED;
DISTRICT COURT'S CERTIFIED INTERLOCUTORY ORDER REVERSED;
CAUSE REMANDED WITH INSTRUCTIONS.

CONCUR: REIF, V.C.J., WINCHESTER, EDMONDSON, TAYLOR, COMBS and GURICH, JJ.

CONCURS IN RESULT: KAUGER, J.

DISSENT: COLBERT, C.J. and WATT, J.

FOOTNOTES

[1] 12 O.S.2011, § 952(b)(3) provides:

"(b) The Supreme Court may reverse, vacate or modify any of the following orders of the district court, or a judge thereof . . .

"3. Any other order, which affects a substantial part of the merits of the controversy when the trial judge certifies that an immediate appeal may materially advance the ultimate termination of the litigation; provided, however, that the Supreme Court, in its discretion, may refuse to hear the appeal. . . ."

[2] Title 36 § 607.1 has been amended. At the time the petition was filed, December 22, 2011, this statute provided: "Notwithstanding any other provision of law, an entity organized pursuant to the Interlocal Cooperation Act, Section 1001 et seq. of Title 74 of the Oklahoma Statutes, for the purpose of transacting insurance shall be considered an insurer at such time that the entity has within a twelve-month period received aggregate premiums of One Million Dollars ($1,000,000.00) for all kinds of insurance that the entity transacts. Such an entity shall be eligible to qualify for and hold a certificate of authority to transact insurance in this state."

The amended statutes may be found in 2013 Okla.Sess.Laws, ch. 306, § 1, and 2014 Okla.Sess.Laws, ch. 39, § 1, eff. Nov. 1, 2014.

[3] ACCO-SIG recently filed a document with this Court entitled "Petitioner's Notice to The Supreme Court of Oklahoma." In that document, ACCO-SIG calls our attention to Senate Bill 2026, that will take effect November 1, 2014. That law amends 36 O.S.2011, § 607.1, and provides as follows: "A. An entity organized pursuant to the Interlocal Cooperation Act (an "Interlocal Entity") for the purpose of transacting insurance, except those Interlocal Entities created pursuant to the terms of The Governmental Tort Claims Act, shall be considered an insurer at such time that the entity has within a twelve-month period received aggregate premiums of One Million Dollars ($1,000,000.00) for all kinds of insurance that the entity transacts. Such an entity shall be eligible to qualify for and hold a certificate of authority to transact insurance in this state." Emphasis is added to reveal the amendment. ACCO-SIG asserts that this change supports its view that the legislative intent to exempt Interlocal Entities, like itself, from the purview of the current version of § 607.1(A). The county answers that the amendment signifies, not a clarification of the previous statute, but a new intent expressed by the present amendment. ACCO-SIG replied to the county's answer. However, the amendment and these arguments do not change this Court's view stated in this opinion.

[4] Merriam-Webster Unabridged Dictionary online, http://unabridged.merriam-webster.com/unabridged/behalf.






 Citationizer© Summary of Documents Citing This Document
 
 
 Cite
 Name
 Level
 
 
 None Found.
 
 
 Citationizer: Table of Authority
 
 
 Cite
 Name
 Level
 
 
 Oklahoma Supreme Court Cases
 Cite
Name
Level

 2001 OK 11, 19 P.3d 276, 72 OBJ 545, FEHRING v. STATE INS. FUND
Discussed
 2013 OK 6, 302 P.3d 1164, CITY OF CHOCTAW v. OKLAHOMA MUNICIPAL ASSURANCE GROUP
Discussed at Length
Title 12. Civil Procedure
 Cite
Name
Level

 12 O.S. 952, Jurisdiction of Supreme Court
Cited
Title 36. Insurance
 Cite
Name
Level

 36 O.S. 607.1, Entities that are Considered Insurers - Guidelines for Annual Audit - Fines
Discussed at Length
Title 51. Officers
 Cite
Name
Level

 51 O.S. 152, Definitions
Discussed at Length
 51 O.S. 152.1, Adoption of Doctrine of Sovereign Immunity
Discussed
 51 O.S. 167, Insurance
Cited
 51 O.S. 169, Counties - Insurance
Cited