BD. OF CTY. COMM'RS. OF HARMON CTY. v. ASSOC. OF CTY. COMM'RS. OF OKLA.
2022 OK CIV APP 36
Case Number: 119397
Decided: 02/16/2022
Mandate Issued: 11/02/2022
DIVISION IV
THE COURT OF CIVIL APPEALS OF THE STATE OF OKLAHOMA, DIVISION IV
Cite as: 2022 OK CIV APP 36, __ P.3d __

 

THE BOARD OF COUNTY COMMISSIONERS OF HARMON COUNTY, a political subdivision of the State of Oklahoma, Plaintiff/Appellant,
v.
ASSOCIATION OF COUNTY COMMISSIONERS OF OKLAHOMA SELF-INSURED GROUP (ACCO-SIG), an association of political subdivisions of the State of Oklahoma, Defendant/Appellee.

APPEAL FROM THE DISTRICT COURT OF
OKLAHOMA COUNTY, OKLAHOMA

HONORABLE RICHARD OGDEN, TRIAL JUDGE

AFFIRMED

Julia C. Rieman, GUNGOLL, JACKSON, BOX & DEVOLL, P.C., Enid, Oklahoma, for Plaintiff/Appellant

J. Mark McAlester, FENTON, FENTON, SMITH, RENEAU & MOON, Oklahoma City, Oklahoma, for Defendant/Appellee

DEBORAH B. BARNES, PRESIDING JUDGE:

¶1 The Board of County Commissioners of Harmon County, a political subdivision of the State of Oklahoma, (the Board) appeals from an order of the district court sustaining the motion for summary judgment of Association of County Commissioners of Oklahoma Self-Insured Group, an association of political subdivisions of the State of Oklahoma (ACCO-SIG). We affirm.

BACKGROUND

¶2 In 2014, Tiffany Glover filed a civil lawsuit in federal court alleging she was sexually assaulted while in the custody of the Harmon County jail. Ms. Glover named several defendants in the 2014 case, including the Sheriff of Harmon County. She alleged the Sheriff failed in his duty to protect her at the jail. A jury ultimately returned a verdict in Ms. Glover's favor in the amount of $6,500,000. In addition, Ms. Glover was awarded attorney fees and costs totaling approximately $530,000.

¶3 At all times relevant to the 2014 case, Harmon County was insured through ACCO-SIG under a policy with a coverage limit of $2,000,000 per occurrence for law enforcement liability. After the jury verdict in the 2014 case, ACCO-SIG completed payment of the full amount of the coverage limit.

¶4 The Board initiated the present action against ACCO-SIG

ACCO-SIG's breach of its contractual obligations under the [policy], in failing to settle the Lawsuit, despite requiring that [the Board] cede to ACCO-SIG total control and authority over the defense of the Lawsuit and all settlement negotiations with Glover, has caused Harmon County and its citizens to suffer damages in excess of $5,000,000.00 plus interest[.]

The Board alleged ACCO-SIG failed to perform with ordinary skill and competence the services it contracted to provide.

¶5 In February 2020, ACCO-SIG filed a motion for summary judgment. ACCO-SIG asserts it "is immune from liability under the Governmental Tort Claims Act (GTCA) for the tort of bad faith and [the Board] cannot recover damages under a breach of contract theory beyond the limits of liability in the insuring agreement[.]" The parties agree ACCO-SIG "is an agency of State of Oklahoma political subdivisions created . . . to pool self-insured reserves, claims and losses of its member counties and provide property and liability protection plans to participating counties in Oklahoma," and ACCO-SIG points out in its motion that in Board of County Commissioners of Delaware County v. Association of County Commissioners of Oklahoma Self-Insurance Group, 2014 OK 87339 P.3d 866

¶6 Following a hearing, the district court, in an Order filed in February 2021, sustained ACCO-SIG's motion for summary judgment. The court noted that "[t]his action is one for breach of contract only, [and] the tort claim of bad faith breach of contract has not been pled by [the Board]." The court noted that, moreover, "[t]he statute of limitations for pleading a tort claim has run." The court stated it was thus "presented with the question of law of whether, in Oklahoma, there can be a breach of contract claim against ACCO-SIG for contractual damages that exceed the policy limits of a liability protection agreement issued by ACCO-SIG to [the Board]." The court stated that, in general, "[c]onsequential damages are recognized under the statutes of Oklahoma with regard to remedies for breach of contract," but concluded that "ACCO-SIG has no duty to pay contractual damages beyond the policy limits[.]" The court reasoned that such damages may be available under "the tort cause of action for bad faith breach of contract," but that "ACCO-SIG is immune from suit for the tort cause of action for bad faith breach of contract."

¶7 From the district court's Order sustaining ACCO-SIG's motion for summary judgment, the Board appeals.

STANDARD OF REVIEW

¶8 "Issues in summary process stand before us for de novo review. . . . If no material fact or inference derived from the evidentiary materials stands in dispute and if the law favors the moving party's claim or liability-defeating defense, summary judgment is [that] party's due." Morales v. City of Okla. City ex rel. Okla. City Police Dep't, 2010 OK 9230 P.3d 869See also Finnell v. Seismic, 2003 OK 3567 P.3d 339Carmichael v. Beller, 1996 OK 48914 P.2d 1051

ANALYSIS

¶9 We agree with the trial court that the dispositive issue is whether the Board can pursue a breach of contract claim against ACCO-SIG for contractual damages in excess of the policy limits. As noted by the trial court, and as the Board acknowledges in its response to the motion for summary judgment, the Board has not attempted to assert a tort claim and, instead, seeks to recover damages in excess of the policy limits based solely on a claim of breach of contract.Bd. of Cnty. Comm'rs of Del. Cnty. v. Ass'n of Cnty. Comm'rs of Okla. Self-Ins. Grp., 2014 OK 87339 P.3d 866

¶10 The inability of the Board to assert a tort claim of bad faith against ACCO-SIG is not without significance in terms of potential recovery. Our review of Oklahoma jurisprudence, as well as of the policy in question, leads to the conclusion that the Board's recovery under a breach of contract claim cannot exceed the policy limits. "Under Oklahoma law, a tort claim for bad faith and a claim for breach of contract are separate and independent bases for recovery," Ball v. Wilshire Ins. Co., 2009 OK 38221 P.3d 717Martin v. Gray, 2016 OK 114385 P.3d 64Christian v. Am. Home Assurance Co., 1977 OK 141577 P.2d 899Id. ¶¶ 6 & 25.

¶11 In Carney v. State Farm Mutual Automobile Insurance Company, 1994 OK 72877 P.2d 1113Id. ¶ 4. The Carney Court set forth, as one example, a breach of "the duty to act in good faith toward the insured by accepting reasonable settlements," stating: "For the breach of this duty, this Court imposed liability in excess of policy limits." Id. (citing, inter alia, Nat'l Mut. Cas. Co. v. Britt, 1948 OK 256200 P.2d 407

¶12 The Carney Court stated that because, "in the case at bar, there is no evidence before this Court that [the insurer's] conduct in litigating the [insured's] claim constituted bad faith," 1994 OK 7212 O.S. 1991 § 727not exceeding the policy limits," 1994 OK 72Carney Court was addressing the issue of whether prejudgment interest could properly exceed the policy limits, the Court, in reaching its determination, reasoned as follows: "the carrier's liability is limited by the contract, and we find no public policy reason to extend that liability beyond the terms of the contract." Id. ¶ 19.

¶13 Finally, in Taylor v. State Farm Fire & Casualty Company, 1999 OK 44981 P.2d 1253

While numerous items of damage may result from one injurious occurrence, the party who seeks to recover for an insured loss has but a single cause of action, although its claim may be advanced concurrently on ex contractu and ex delicto theories. When a lawsuit is brought solely for recovery of loss under the policy, it is, of course, limited to an ex contractu theory. But when an action is pressed for bad-faith refusal to settle . . . the plaintiff may seek damages (a) for the loss payable under the policy together with (b) those other items of recovery that are consistent with harm flowing from insurer's bad-faith breach of its implied-in-law duty to settle.

Id. ¶ 9 (footnotes omitted) (emphasis in original).

¶14 In the present case, the insurance policy provides, as quoted above, that once the total limit of liability is exhausted, ACCO-SIG's "obligations under [the policy] with respect to any claim, including the duty to defend, shall terminate immediately." Based on the terms of the policy and Oklahoma law, we conclude ACCO-SIG is not subject to liability for damages in excess of the policy limits under a mere breach of contract theory.

¶15 The Board contested this conclusion at the December 2020 hearing on policy grounds by asserting that limiting damages to the policy limits allows ACCO-SIG to "handle claims as incompetently and as poorly as [it] want[s] to and suffer no consequences so long as [it] pay[s] policy limits." The Carney Court addressed analogous concerns (albeit related to limiting prejudgment interest to the policy limits), but concluded such policy concerns "are met by our cases dealing with bad faith. When an insurer's delay in paying is unwarranted, such as to amount to bad faith, our case law is sufficient to protect the insured under such circumstances." 1994 OK 72Bd. of Cnty. Comm'rs of Del. Cnty., 2014 OK 87id. ¶¶ 1 & 12. It appears that the Board's assertion at the hearing is therefore accurate to the following extent: ACCO-SIG is indeed immune from a bad faith tort action in the handling of the underlying litigation, as ACCO-SIG admits. Nevertheless, while the Board's concerns might arguably be addressed by allowing it to seek damages in excess of the policy limits based solely on a breach of contract claim, arriving at such a conclusion would plainly thwart, rather than honor, legislative intent,

¶16 Moreover, the Board's policy argument appears to have been at least partly addressed by the Oklahoma Supreme Court in Board of County Commissioners of Delaware County, in which the Court, prior to turning to the issue of ACCO-SIG's immunity under the GTCA, explained as follows:

A governmental entity's cooperative insurance plan [like that entered into with ACCO-SIG], which pools self-insured reserves, claims and losses of its member municipalities or counties, shares little in common with commercial enterprises that sell insurance for a profit to their shareholders. The relationship between these governmental entities is contractual in nature. The contracting parties have substantially more freedom to contract than an individual consumer dealing with a commercial for-profit insurance enterprise. All the contracting parties in a governmental cooperative insurance plan have equal interests in enforcing the contracts protecting the pooling of their resources.

Id. ¶ 6. The Court explained that "with such voluntary governmental entities, the protections afforded members of the public with regards to private insurance is not necessary in the protections of municipalities and counties in this type of insurance plan." Id. ¶ 8.

¶17 Given the nature of the contracting parties in a governmental cooperative insurance plan, and their heightened equality and "freedom to contract," id. ¶ 6, the concern with "protect[ing] [an] insured" transacting with a for-profit insurance company, Carney, ¶ 20, is misplaced in circumstances like those presented in Board of County Commissioners of Delaware County and the case at hand, thus rendering the Board's policy argument less compelling.

CONCLUSION

¶18 Because ACCO-SIG is protected from a bad faith tort claim and, indeed, because the Board states it is not even attempting to assert such a claim against ACCO-SIG, we conclude the Board's recovery is limited to the contractual limits set forth in the policy. Because it is undisputed ACCO-SIG has paid the $2,000,000 contractual limit of liability, the trial court properly entered summary judgment in ACCO-SIG's favor. The district court's order is, therefore, affirmed.

¶19 AFFIRMED.

HIXON, J., concurs, and FISCHER, C.J., concurs in result.

FOOTNOTES

See, e.g., 131 A.L.R. 1499 (Originally published in 1941) ("[N]otwithstanding the insurer's failure or refusal to compromise or settle such a claim for an amount within the policy limit, no action in assumpsit or on the contract will lie against it for the amount that a judgment recovered against the insured is in excess of the policy limit," but "an insurer may be held liable in an action of tort for the amount that a judgment recovered against the insured by an injured person is in excess of the sum covered by the policy, where the insurer was guilty of fraud or bad faith in failing to compromise the action.").

bad faith refusal to settle or a bad faith breach of the duty to settle. To the extent the Board asserts it is actually asserting a theory of a breach of a duty to defend that is distinct from a breach of the duty to settle, we are not persuaded it has successfully asserted a distinct theory, nor has the Board presented any Oklahoma authority supporting an argument that such a distinct theory would necessitate a different outcome.

Fent v. Okla. Capitol Imp. Auth., 1999 OK 64984 P.2d 200See also Treat v. Stitt, 2020 OK 64473 P.3d 43Fent, ¶ 4 ("Such questions are plainly and definitely established by our fundamental law as functions of the legislative branch of government. Respect for the integrity of our tripartite scheme for distribution of governmental powers commands that the judiciary abstain from intrusion into legislative policymaking." (citations omitted)). Cf. New Prime Inc. v. Oliveira, 139 S. Ct. 532, 543 (2019) ("If courts felt free to pave over bumpy statutory texts in the name of more expeditiously advancing a policy goal, we would risk failing to 'tak[e] . . . account of' legislative compromises essential to a law's passage and, in that way, thwart rather than honor 'the effectuation of [the lawmakers'] intent.'" (citation omitted)).

 

 

FISCHER, C.J., concurring in result:

¶1 In this case, the Board of County Commissioners of Harmon County alleges that ACCO-SIG's failure to accept an offer to settle Tiffany Glover's claim for less than its $2,000,000.00 policy limit caused the Board "to suffer damages in excess of $5,000,000.00 plus interest." It is undisputed that ACCO-SIG paid the amount due pursuant to its insurance policy after Glover recovered a judgment against the Board for $6,500,000.00. Therefore, the Board seeks consequential damages in excess of the loss coverage limit stated in its insurance policy to compensate for the uninsured portion of Glover's judgment. The Board alleges that these damages resulted from ACCO-SIG's failure to properly investigate and adjust Glover's claim as well as its failure to make or accept any reasonable settlement offer. According to the Board, by engaging in this conduct ACCO-SIG breached "the implied covenant of good faith and fair dealing that the Supreme Court has long recognized accompanies every contract." Its claim for consequential damages is based on the alleged breach of this implied duty. In my view, the Board has failed to provide authority supporting its claim for consequential damages.

¶2 The damages available to the Board in this case are provided by statute. "For the breach of an obligation arising from contract, the measure of damages . . . is the amount which will compensate the party aggrieved for all the detriment proximately caused thereby, or which, in the ordinary course of things, would be likely to result therefrom." 23 O.S.2011 § 21See 23 O.S.2011 § 21Carney v. State Farm Mut. Auto. Ins. Co., 1994 OK 72877 P.2d 1113Id.

¶3 As a result, the Board's entitlement to damages in excess of the policy limit depends on its ability to establish a public policy reason to hold ACCO-SIG liable for more than it agreed to pay the Board for a covered loss. The Board finds this liability in an alleged breach of "the implied covenant of good faith and fair dealing that the Supreme Court has long recognized accompanies every contract." Tort liability is one of the two remedies that may be available for breach of the implied duty to deal fairly and in good faith in the performance of a contract. First Nat'l Bank and Trust of Vinita v. Kissee, 1993 OK 96859 P.2d 502Taylor v. State Farm Fire & Casualty Co., 1999 OK 44981 P.2d 125323 O.S.2011 § 61

¶4 The Governmental Tort Claims Act, 51 O.S.2011 and Supp. 2020 §§ 151Tuffy's, Inc. v. City of Oklahoma City, 2009 OK 4212 P.3d 1158See 51 O.S. Supp. 2015 § 153

¶5 In Christian v. American Home Assurance Co., 1977 OK 141577 P.2d 899Board of County Commissioners of Delaware County v. Association of County Commissioners of Oklahoma Self-Insured. Group, 2014 OK 87339 P.3d 866Christian, and the Board does not rely on this tort. The Board contends that its right to consequential damages is derived from some different tort.

¶6 Delaware County does not hold that ACCO-SIG is immune from liability for all torts and the Tort Claims Act would not support that position. "The state or a political subdivision shall be liable for loss resulting from its torts or the torts of its employees acting within the scope of their employment . . . if a private person or entity, would be liable for money damages under the laws of this state." 51 O.S. Supp. 2015 § 153Tuffy's, Inc. v. City of Oklahoma City, 2009 OK 4

¶7 First, the duty of good faith and fair dealing recognized in Christian "applies to activities after the establishment of the insurer-insured relationship, and includes the claims handling process." Wathor v. Mut. Assurance Adm'rs, Inc., 2004 OK 287 P.3d 559Christian, "tort liability may be imposed only where there is a clear showing that the insurer unreasonably, and in bad faith, withholds payment of the claim of its insured." Id. ¶ 26. All of the allegedly negligent conduct relied on by the Board is covered by the "bad faith" tort recognized in Christian. Consequently, the Board has failed to show that any "negligent" failure to investigate and adjust a claim has been recognized as a separate tort independent from the Christian "bad faith" tort.

¶8 Second, the Board has failed to show that the conduct it relies would constitute a tortious breach of the duty of good faith and fair dealing. "There is simply no general duty to use reasonable care in the performance of a contract." Embry v. Innovative Aftermarket Sys. L.P., 2010 OK 82247 P.3d 1158Id. "In ordinary commercial contracts, a breach of [the duty of good faith and fair dealing implied in every contract] merely results in damages for breach of contract, not independent tort liability." Wathor, 2004 OK 2Rodgers v. Tecumseh Bank, 1988 OK 36756 P.2d 1223Christian to a commercial loan debtor/creditor relationship).

¶9 In Christian, the "independent basis" supporting the tort claim is derived from a "special relationship" between an insurer and its insured "marked by (1) a disparity in bargaining power where the weaker party has no choice of terms, also called an adhesion contract, and (2) the elimination of risk." Embry, 2010 OK 82Delaware Cnty., 2014 OK 87Id. ¶ 8.

¶10 In my view, the Board has failed to provide any authority for its claim against ACCO-SIG for damages in excess of the policy limit stated in the parties' insurance contract based on some tort theory of liability separate from the "bad faith" breach of the covenant of good faith and fair dealing recognized in Christian. In addition, it is undisputed that ACCO-SIG has already paid the maximum amount due required by that contract. Therefore, the Board cannot show that ACCO-SIG breached the contract at issue, much less that it has suffered ex contractu damages. Taylor v. State Farm Fire & Casualty Co., 1999 OK 44981 P.2d 1253

¶11 As a result, ACCO-SIG is entitled to judgment as a matter of law. For these reasons, I agree with the result reached by the Majority in this case.

FOOTNOTES

. See Morgan v. State Farm Mut. Auto. Ins. Co., 2021 OK 27488 P.3d 743Id. ¶ 24. Because the Board did not file this action until after the judgment had been entered and ACCO-SIG had paid the amount required by the contract, the Board could not prove the third element of a breach of contract claim, "damages as a result of that breach." Digital Design Grp., Inc. v. Info. Builders, Inc., 2001 OK 2124 P.3d 834