BD. OF COUNTY COMM'RS v. ASSOC. OF COUNTY COMM'RS OF OKLA. SELF-INSURED GROUP



 

 
 
 
 
 
 Skip to Main Content
 Accessibility Statement
 
 
 
 
 
 Help
 Contact Us
 
 
 
 
 e-payments
 Careers
 
 
 
 
 
 
 
 
 
 
 
 Home
 Courts
 Decisions
 Programs
 News
 Legal Research
 Court Records
 Quick Links
 
 
 
 
 
 OSCN Found Document:BD. OF COUNTY COMM'RS v. ASSOC. OF COUNTY COMM'RS OF OKLA. SELF-INSURED GROUP

 

 
 



 
 
 
 
 Previous Case

 
 Top Of Index

 
 This Point in Index

 
 Citationize

 
 Next Case

 
 Print Only
 
 
 

 
 BD. OF COUNTY COMM'RS v. ASSOC. OF COUNTY COMM'RS OF OKLA. SELF-INSURED GROUP
2021 OK 15
Case Number: 118613
Decided: 04/06/2021
THE SUPREME COURT OF THE STATE OF OKLAHOMA
Cite as: 2021 OK 15, __ P.3d __

 

 

THE BOARD OF COUNTY COMMISSIONERS OF HARMON COUNTY, a political subdivision of the State of Oklahoma, Plaintiff/Appellee,
v.
ASSOCIATION OF COUNTY COMMISSIONERS OF OKLAHOMA SELF-INSURED GROUP (ACCO-SIG), an association of political subdivisions of the State of Oklahoma, Defendant/Appellant.

APPEAL FROM THE DISTRICT COURT OF OKLAHOMA COUNTY

Honorable Richard Ogden, Trial Judge

¶0 The Board of County Commissioners of Harmon County, Oklahoma, filed an action against the Association of County Commissioners of Oklahoma Self Insured Group (ACCO-SIG). Subsequently, ACCO-SIG sought to disqualify the Board's lawyers. It alleged that one of the Board's attorneys had a conflict of interest because he had previously represented ACCO-SIG in a substantially similar matter four years earlier. ACCO-SIG seeks to have the lawyer, and his entire law firm, disqualified from representing the Board. After the trial court held a disqualification hearing, it denied ACCO-SIG's request to disqualify. ACCO-SIG appealed, and we retained the appeal. We hold that under the facts presented, disqualification is not required.

APPEAL PREVIOUSLY RETAINED;
TRIAL COURT AFFIRMED.

Douglas L. Jackson, Julia C. Rieman, Erin J. Rooney, Enid, Oklahoma, for Plaintiff/Appellee.

J. Mark McAlester, Michael S. McMillin, Kelly L. Offutt, Oklahoma City, Oklahoma, for Defendant/Appellant.

KAUGER, J.:

¶1 The dispositive issue presented is whether the plaintiff's chosen counsel, and his law firm are disqualified from representing the plaintiff because of an alleged prior association with the defendant. We hold that under the facts presented, disqualification is not required.

ALLEGED FACTS

¶2 On September 3, 2014, a former inmate of the Harmon County Jail sued the Sheriff of Harmon County in federal court for an alleged sexual assault/rape by a City of Hollis Police officer while the inmate was incarcerated. At the time, the plaintiff/appellee, Board of County Commissioners of Harmon County, Oklahoma (Board), had a Liability Protection Agreement with the defendant/appellant, Association of County Commissioners of Oklahoma Self-Insured Group (ACCO-SIG).

¶3 The agreement provided for $2,000,000.00 in liability protection for claims against the Sheriff if he was sued in his official capacity. Pursuant to the agreement, ACCO-SIG hired legal representation for the Sheriff, the law firm of Collins, Zorn, and Wagner, P.C. and Stephen L. Gerries (collectively the firm). During more than a year of mediation/settlement negotiations, the firm made various settlement offers ranging from $7,500.00, to $25,000.00, to $125,000.00, to $150,000.00, and finally $225,000.00. The offers were refused.

¶4 On September 23, 2016, the federal court entered a judgment against the Sheriff in the amount of $6,500,00.00 with interest. On December 12, 2016, the court awarded $512,687.00 in attorney fees. Consequently, ACCO-SIG paid the $2,000,000.00 in benefits under the agreement.

¶5 On February 1, 2018, the Board filed a lawsuit in Oklahoma County District Court against ACCO-SIG and the firm. The lawsuit centered around the Liability Protection Agreement, and ACCO-SIG's lawyers, and the firm's failed settlement negotiations in the Sheriff's federal lawsuit. The Board alleged breach of contract by ACCO-SIG, and professional negligence/malpractice by the firm. On February 5, 2018, attorneys Douglas Jackson and Julia Rieman of the law firm of Gungoll, Jackson, Box & Devoll, P.C. of Enid, Oklahoma, filed their entry of appearance in this cause to represent the Board.

¶6 On May 10, 2019, Erin Rooney (Rooney) also of the law firm of Gungoll, Jackson, Box, and Devoll of Oklahoma City filed an entry of appearance on behalf of the Board. On June 22, 2019, the Board filed an Amended Petition adding a claim of breach of fiduciary duty against ACCO-SIG's lawyers who represented the Sheriff.

¶7 On November 12, 2019, six months after Rooney filed his entry of appearance, ACCO-SIG filed a Motion to Disqualify him from representing the Board. It sought to disqualify Rooney, and the other lawyers at Gungoll, Jackson, Box and Devoll, from representing the Board due to an alleged conflict of interest. ACCO-SIG asserted that Rooney had represented ACCO-SIG in a nearly identical matter four years prior to his entry of appearance in this cause. According to ACCO-SIG, Rooney's participation in the litigation, and thus the Gungoll firm's participation in this cause, is contrary to the Oklahoma Rules of Professional Conduct.[1] ACCO-SIG argues that Rooney is forced to choose between zealous representation of the Board, or exposing confidential information to the detriment of his former client, now opponent, ACCO-SIG. The Board objected to the Motion to Disqualify, arguing that it was meritless.

¶8 The trial court held disqualification hearings on December 18, 2019, and January 3, 2020. On February 3, 2020, the trial court filed an order denying the Motion to Disqualify. It noted that while it was a "close call," disqualification was not required. ACCO-SIG filed an appeal the same day. We retained the appeal on February 12, 2020, and the cause was assigned to this chamber for an opinion on January 28, 2021.

STANDARD OF REVIEW

¶9 The denial of a motion to disqualify is immediately appealable as a final order because it affects the substantial rights of a party.[2] When reviewing the order, we review the trial court's findings of fact for clear error and carefully examine de novo the trial court's application of ethical standards.[3] The standard for disqualifying counsel is whether real harm to the integrity of the judicial process is likely to result if counsel is not disqualified.[4] This is a high standard to meet.[5] The burden rests with the moving party to establish the likelihood of harm by a preponderance of the evidence.[6]

UNDER THE FACTS PRESENTED, 
DISQUALIFICATION IS NOT REQUIRED.

¶10 The Board argues that the attempt at disqualification is without merit, and nothing more than a delay tactic. ACCO-SIG argues that the integrity of the judicial process is at stake, and that it will suffer irreparable harm if Rooney and his law firm are not required to disqualify.

A. 

Disqualification Under The Oklahoma Rules Of Professional Conduct, 
And The Standards Set Forth By Our Previous Decisions.

¶11 Three rules of The Oklahoma Rules of Professional Conduct, 5 O.S. 2011 Ch. 1, App. 3A are implicated in this cause:

1) unless a client gives informed consent, Rule 1.9 prohibits a lawyer who, or a lawyer whose former firm, has formerly represented a client from representing another person in the same or a substantially related matter if that person's interests are materially adverse to the interests of the former client;[7]

2) when any lawyer practicing alone would be prohibited from representing a client, none of the lawyers associated their firm shall knowingly represent the client;[8] and

3) Rule 1.6 prohibits a lawyer from revealing confidential information or unauthorized disclosures of a former client.[9]

Consequently, the focus of our inquiry is whether: 1) the former cause in which Rooney represented ACCOC-SIG and the current cause are substantially similar; and 2) Rooney obtained any confidential information from ACCOC-SIG by his representation of them in the former cause which would require disqualification.

¶12 We discussed the proper process and standards for disqualification of an opponent's attorney in Arkansas Valley State Bank v. Phillips, 2007 OK 78, 171 P.3d 899 and Miami Business Services, LLC. v. Davis, 2013 P.3d 477. In Arkansas Bank, supra, the plaintiff Bank sought to disqualify the defendant's counsel, alleging that he had received confidential work product information from one of the Bank's former employees. In deciding the disqualification, the trial court applied an "appearance of impropriety" standard, resolved all doubt in favor of disqualification, but neglected to make proper fact findings of whether the attorney received any knowledge of material and confidential information. We reversed the trial court and said that:

1) A party litigant in a civil proceeding has a fundamental right to employ counsel of his or her own choosing;[10]
2) The right to select one's own counsel is not absolute, and
litigant's choice may be set aside where the choice threatens the integrity of the judicial process;[11]and
3) Disqualification is such a drastic measure it should be utilized only if real harm is likely to result.[12]

We also recognized that balance must be struck between a party's right to employ counsel of choice; the moving party's right to maintain confidentiality; and the public's interest in preserving integrity of the judicial process.[13]

¶13 After Arkansas Bank considering these factors, we held that the proper test for granting a motion to disqualify counsel is whether real harm to the integrity of the judicial process is likely to result if counsel is not disqualified.[14] In order to determine whether an attorney should be disqualified based on a conflict of interest or improper possession of confidential information, the trial court must hold an evidentiary hearing, and include in its disqualification order a specific factual finding that the attorney had knowledge of material and confidential information.[15] Because the trial court had not held a hearing, nor made such findings, we reversed and remanded the matter.

¶14 In Miami, supra, the plaintiff also sought to disqualify the defendant's counsel stemming from the counsel's previous involvement with both the plaintiff and defendant. We held that preservation of the integrity of judicial process is sufficient reason to review a motion to grant or deny disqualification.[16] We reaffirmed that an evidentiary hearing was necessary as well as specific factual findings that the attorney either had, or did not have, knowledge of material and confidential information.[17] We reviewed those findings for clear error, after examining the record de novo.[18] Because the trial court had not held an evidentiary hearing, we again reversed and remanded.

B.

Similarity Of The Previous Cause To This Cause And 
Obtaining Confidential Information.

¶15 In this cause, the trial court held an evidentiary hearing, and made specific findings of fact before determining that disqualification was not required. Again, we must examine the trial court's findings to determine if they were in clear error. Although we are not bound by the comments of the Oklahoma Rules of Professional Conduct they may be persuasive and provide guidance.[19] Comments to the rules do not add obligations to the Professional Responsibility Rules, but merely provide the lawyer with guidance, explaining and illustrating the meaning of a particular rule. Violation of a rule does not give rise to a cause of action, nor create the presumption of a legal duty, nor should such violation serve as the basis for civil liability.[20]

¶16 The comments to Rule 1.6 direct our consideration to all matters communicated by the client, as well as all information relating to the representation.[21] A lawyer may not disclose information except as authorized or required by the Rules or other law.[22] The comments to Rule 1.9 provide that the scope of a matter depends on the facts of a particular situation or transaction, and the degree of the lawyer's involvement.[23]

¶17 When a lawyer has been directly involved in a specific transaction, subsequent representation of other clients with materially adverse interests in that transaction is generally prohibited.[24] On the other hand, a lawyer who repeatedly handled a type of problem for a former client is not precluded from later representing another client in a factually distinct problem of that type, even though the subsequent representation involves a position adverse to the prior client.[25] The underlying question is whether the lawyer was so involved in the matter that the subsequent representation can be justly regarded as a changing of sides in the matter in question.[26]

¶18 Matters are "substantially related" if they involve the same transaction or legal dispute, or if otherwise, there is a substantial risk that confidential factual information which would normally have been obtained in the prior representation would materially advance the client's position in the subsequent matter. In the case of an organizational client, general knowledge of the client's policies and practices ordinarily will not preclude a subsequent representation. However, knowledge of specific facts gained in a prior representation that are relevant to the matter in question ordinarily will preclude such a representation.[27]

¶19 A former client is not required to reveal the confidential information learned by the lawyer in order to establish a substantial risk that the lawyer has confidential information to use in the subsequent matter.[28] A conclusion about the possession of such information may be based on the nature of the services the lawyer provided the former client and information that would, in ordinary practice, be learned by a lawyer providing such services.[29]

¶20 In 2012, Rooney participated in representing ACCO-SIG in Rogers County, Oklahoma, Case No. CJ-2012-200. The lawsuit concerned:

1) breach of contract allegations against ACCO-SIG relating its failure to defend and settle lawsuits brought by seventeen inmates against a Delaware County Sheriff;

2) ACCO-SIG's alleged improper treatment of the individual allegations against the Sheriff as one occurrence for liability limits;

3) allegations of bad faith conduct by ACCO-SIG relating to its communication with the Board of County Commissioners, and the defense and settlement of the inmate lawsuits.[30]

The cause eventually made its way to this Court as a certified interlocutory appeal, resulting in an opinion in Board of County Commissioners v. Association of County Commissioners of Oklahoma Self-Insured. Group, 2014 OK 87, 339 P.3d 866. The opinion addressed the questions of whether the ACCO-SIG was an insurer, and whether it was protected as a governmental entity from tort liability.

¶21 This cause also involves breach of conduct and bad faith allegations against ACCO-SIG in its defense and settlement process in defense of inmate sexual assault lawsuits against a Sheriff. Although the facts of both cases may not be identical, they need not be. The nature of both lawsuits involves the same type of legal dispute, ACCO-SIG's conduct towards its policy holders, and the same type of confidential information would likely be exposed in both cases. We agree with the trial court that, at least for purposes of disqualification, this cause and the previous cause involving the Sheriff of Delaware County in which Rooney participated are similar.

¶22 Nevertheless, the similarity of the two matters does not end the inquiry. Pursuant to Arkansas Bank, supra and Miami, supra, the question for required disqualification is whether, because of the similar representation, the attorney who is alleged to be disqualified gained knowledge of any material or confidential information which would jeopardize the integrity of judicial process.

¶23 After de novo review, we determine that the trial court's conclusion that disqualification was not required was not clear error. According to Rooney's testimony, he: 1) never met with ACCO-SIG, other than one lunch meeting he attended with a firm partner; 2) never obtained any confidential information or had any personal recollection of any; 3) never met with employees of ACCO-SIG; and 4) never participated in settlement conferences or depositions. The partner of Rooney's prior law firm, who also represented ACCO-SIG, testified by deposition that Rooney obtained no confidential information from the work he did from ACCO-SIG.

¶24 We agree with ACCO-SIG that there was a risk that Rooney could have obtained confidential information because he and his prior law firm represented ACCO-SIG. A former client should not have to reveal the precise confidential information learned by the lawyer in order to establish the lawyer has confidential information to use in the subsequent matter. The evidence in this cause shows that Rooney had access to nothing more than general information about ACCO-SIG's policies, and not any knowledge of specific facts gained which should preclude representation. If Rooney is not disqualified because of his lack of knowledge of confidential information, neither is his law firm.

CONCLUSION

¶25 The trial court accurately described this cause as a "close call." Were we to apply "appearance of impartiality" which applies to judicial disqualification,[31] a different result might be required. More than appearance is required to tell a party that their chosen counsel cannot be hired because of prior representation. Propinquity does not equal knowledge. In this cause the evidence falls short in showing that the attorney who is alleged to be disqualified, gained knowledge of any material or confidential information which would jeopardize the integrity of judicial process. Accordingly, the trial court is affirmed.

APPEAL PREVIOUSLY RETAINED;
TRIAL COURT AFFIRMED.

KANE, V.C.J., KAUGER, WINCHESTER, EDMONDSON, COMBS, GURICH, ROWE, JJ., concur.

DARBY, C.J., not participating.

FOOTNOTES

[1] ACCO-SIG relies on the Oklahoma Rules of Professional Conduct, Rules 1.9 and 1.10. Rule 1.9, 5 O.S. 2011 Ch. 1, App. 3A, provides:

Rule 1.9. Conflict of Interest: Duties To Former Clients.

(a) A lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client gives informed consent, confirmed in writing.

(b) A lawyer shall not knowingly represent a person in the same or a substantially related matter in which a firm with which the lawyer formerly was associated had previously represented a client

(1) whose interests are materially adverse to that person; and
(2) about whom the lawyer had acquired information protected by Rules 1.6 and
1.9(c)that is material to the matter;

unless the former client gives informed consent, confirmed in writing.

(c) A lawyer who has formerly represented a client in a matter or whose present or former firm has formerly represented a client in a matter shall not thereafter:

(1) use information relating to the representation to the disadvantage of the former client except as these Rules would permit or require with respect to a client, or when the information has been generally known; or
(2) reveal information relating to the representation except as these Rules would permit or require with respect to a client.

Rule 1.10, 5 O.S. 2011 Ch. 1, App. 3A provides:

Rule 1.10. Imputation of Conflicts of Interest: General Rule

(a) While lawyers are associated in a firm, none of them shall knowingly represent a client when any one of them practicing alone would be prohibited from doing so by Rules 1.7 or 1.9 , unless the prohibition is based on a personal interest of the prohibited lawyer and does not represent a significant risk of materially limiting the representation of the client by the remaining lawyers in the firm.

(b) When a lawyer has terminated an association with a firm, the firm is not prohibited from thereafter representing a person with interests materially adverse to those of a client represented by the formerly associated lawyer and not currently represented by the firm, unless:

(1) the matter is the same or substantially related to that in which the formerly associated lawyer represented the client; and
(2) any lawyer remaining in the firm has information protected by Rules 1.6 and 1.9 (c) that is material to the matter.

(c) A disqualification prescribed by this rule may be waived in writing by the affected client under the conditions stated in Rule 1.7.

(d) The disqualification of lawyers associated in a firm with former or current government lawyers is governed by Rule 1.11.

(e) Where a lawyer is prohibited from engaging in certain transactions under Rule 1.8, paragraph (k) of that Rule, and not this Rule, determines whether that prohibition also applies to other lawyers associated in a firm with the personally prohibited lawyer.

[2] Miami Business Services, LLC v. Davis, 2013 OK 20, ¶18, 299 P.3d 477. Title 12 O.S. 2011 §953 provides:

An order affecting a substantial right in an action, when such order, in effect, determines the action and prevents a judgment, and an order affecting a substantial right, made in a special proceeding or upon a summary application in an action after judgment, is a final order, which may be vacated, modified or reversed, as provided in this article.

[3] Miami Business Services, LLC v. Davis, see note 2, supra at ¶10; Arkansas Valley State Bank v. Phillips, 2007 OK 78, ¶8, 171 P.3d 899.

[4] Miami Business Services, LLC v. Davis, see note 2, supra at ¶12; Arkansas Valley State Bank v. Phillips, see note 2, supra at ¶7; Hayes v. Central State Orthopedic Specialists, Inc., 2002 OK 30, ¶9, 51 P.3d 565; Town v. Hubbard, 1999 OK 10, ¶15, 977 P.2d 1084.

[5] Miami Business Services, LLC v. Davis, see note 2, supra at ¶12; Hayes v. Central State Orthopedic Specialists, Inc., see note 4, supra.

[6] Miami Business Services, LLC v. Davis, see note 2, supra at ¶12; Arkansas Valley State Bank v. Phillips, see note 3, supra at ¶23. The Court has described preponderance of the evidence means that which, to the mind of the trier of the fact, or the seeker of the truth, seems most convincing and more probably true. Peyton v. McCaslin, 1966 OK 4, ¶18, 417 P.2d 316; and such evidence as makes it more probable than otherwise that what are alleged to be facts are facts. Midland Valley R. Co. v. Barnes, 1933 OK 26, ¶5, 18 P.2d 1089.

[7] Oklahoma Rules of Professional Conduct, Rule 1.9, 5 O.S. 2011 Ch. 1, App. 3A, see note 1, supra.

[8] Oklahoma Rules of Professional Conduct, Rule 1.10, 5 O.S. 2011 Ch. 1, App. 3A, see note 2, supra.

[9] Oklahoma Rules of Professional Conduct, Rule 1.6, 5 O.S. 2001 Ch. 1, App. 3A, provides:

(a) A lawyer shall not reveal information relating to the representation of a client unless the client gives informed consent, the disclosure is impliedly authorized in order to carry out the representation or the disclosure is permitted by paragraph (b).

(b) A lawyer may reveal information relating to representation of a client to the extent the lawyer reasonably believes necessary:

(1) to prevent reasonably certain death or substantial bodily harm;

(2) to prevent the client from committing:

(i) a crime; or
(ii) a fraud that is reasonably certain to result in substantial injury to the financial interests or property of another and in furtherance of which the client has used or is using the lawyer's services;

(3) to prevent, mitigate or rectify substantial injury to the financial interests or property of another that is reasonably certain to result or has resulted from the client's commission of a crime or fraud in furtherance of which the client has used the lawyer's services, provided that the lawyer has first made reasonable efforts to contact the client so that the client can rectify such criminal or fraudulent act, but the lawyer has been unable to do so, or the lawyer has contacted the client and called upon the client to rectify such criminal or fraudulent act and the client has refused or has been unable to do so;

(4) to secure legal advice about the lawyer's compliance with these Rules;

(5) to establish a claim or defense on behalf of the lawyer in a controversy between the lawyer and the client, to establish a defense to a criminal charge or civil claim against the lawyer based upon conduct in which the client was involved, or to respond to allegations in any proceeding concerning the lawyer's representation of the client; or

(6) as permitted or required to comply with these Rules, other law or a court order.

(c ) A lawyer shall make reasonable efforts to prevent the inadvertent or unauthorized disclosure of, or unauthorized access to, information relating to the representation of a client.

[10] Arkansas Valley State Bank v. Phillips, see note 3, supra at ¶12; Towne v. Hubbard, see note 5, supra at ¶14; State ex rel. Howard v. Oklahoma Corp. Comm'n, 1980 OK 96, ¶23, fn. 6, 614 P.2d 45.

[11] Arkansas Valley State Bank v. Phillips, see note 3, supra at ¶13; Hayes v. Central State Orthopedic Specialists, Inc., see note 4, supra at ¶9; Towne v. Hubbard, see note 5, supra.

[12] Arkansas Valley State Bank v. Phillips, see note 3, supra at ¶13; Hayes v. Central State Orthopedic Specialists, Inc., see note 5, supra at ¶10.

[13] Arkansas Valley State Bank v. Phillips, see note 3, supra at ¶17.

[14] Arkansas Valley State Bank v. Phillips, see note 3, supra at ¶23; Hayes v. Central State Orthopedic Specialists, Inc., see note 5 at ¶10; Towne v. Hubbard, see note 5, supra at ¶15.

[15] Arkansas Valley State Bank v. Phillips, see note 3, supra at ¶23; Piette v. Bradley & Leseberg, 1996 OK 124, ¶1, 930 P.2d183.

[16] Miami Business Services, LLC v. Davis, see note 2, supra, at ¶13.

[17] Miami Business Services, LLC v. Davis, see note 2, supra, at ¶24; Arkansas Valley State Bank v. Phillips, see note 3, supra at ¶8; Piette v. Bradley & Leseberg, see note 15, supra at ¶2.

[18] Miami Business Services, LLC v. Davis, see note 2; Arkansas Valley State Bank v. Phillips, see note 3, supra.

[19] McQueen, Rains & Tresch, LLP v. Citgo Petroleum Corp., 2008 OK 66, ¶21, fn. 15, 195 P.3d 35; McQueen, Rains & Tresch, LLP v. Citgo Petroleum Corp., see note 19, supra.

[20] Miami Business Services, LLC v. Davis, see note 2 at ¶20; Arkansas Valley State Bank v. Phillips, see note 3, supra at ¶19[Preamble: A Lawyer's Responsibilities, Scope, 5 O.S. 2011, Ch. 1, App. 3A.]

[21] The Oklahoma Rules of Professional Conduct, Rule 1.6, 5 O.S. 2011, Ch. 1, App.3A, comments provide in pertinent part:

. . .[2] A fundamental principle in the client-lawyer relationship is that, in the absence of the client's informed consent, the lawyer must not reveal information relating to the representation. See Rule 1.0(e) for the definition of informed consent. This contributes to the trust that is the hallmark of the client-lawyer relationship. The client is thereby encouraged to seek legal assistance and to communicate fully and frankly with the lawyer even as to embarrassing or legally damaging subject matter. The lawyer needs this information to represent the client effectively and, if necessary, to advise the client to refrain from wrongful conduct. Almost without exception, clients come to lawyers in order to determine their rights and what is, in the complex maze of law and regulations deemed to be legal and correct. Based upon experience, lawyers know that almost all clients follow the advice given, and the law is upheld.

[3] The principle of client-lawyer confidentiality is given effect by related bodies of law: the attorney-client privilege, the work product doctrine and the rule of confidentiality established in professional ethics. The attorney-client privilege and work product doctrine apply in judicial and other proceedings in which a lawyer may be called as a witness or otherwise required to produce evidence concerning a client. The rule of client-lawyer confidentiality applies in situations other than those where evidence is sought from the lawyer through compulsion of law. The confidentiality rule, for example, applies not only to matters communicated in confidence by the client but also to all information relating to the representation, whatever its source. A lawyer may not disclose such information except as authorized or required by the Rules of Professional Conduct or other law. See also Scope. . . .

Former Client
[18] The duty of confidentiality continues after the client-lawyer relationship has terminated. See Rule 1.9(c)(2). See Rule 1.9(c)(1) for the prohibition against using such information to the disadvantage of the former client.

[22] Oklahoma Rules of Professional Conduct, Rule 1.6, 5 O.S. 2011 Ch. 1, App. 3A, comments, see note 21, supra.

[23] The Oklahoma Rules of Professional Conduct, Rule 1.9, 5 O.S. 2011 Ch.1, App. 3A, comments, provide in pertinent part:

[1] After termination of a client-lawyer relationship, a lawyer has certain continuing duties with respect to confidentiality and conflicts of interest and thus may not represent another client except in conformity with this Rule. . . .

[2] The scope of a "matter" for purposes of this Rule depends on the facts of a particular situation or transaction. The lawyer's involvement in a matter can also be a question of degree. When a lawyer has been directly involved in a specific transaction, subsequent representation of other clients with materially adverse interests in that transaction clearly is prohibited. On the other hand, a lawyer who recurrently handled a type of problem for a former client is not precluded from later representing another client in a factually distinct problem of that type even though the subsequent representation involves a position adverse to the prior client. . . .

[3] Matters are "substantially related" for purposes of this Rule if they involve the same transaction or legal dispute or if there otherwise is a substantial risk that confidential factual information as would normally have been obtained in the prior representation would materially advance the client's position in the subsequent matter. . . Information acquired in a prior representation may have been rendered obsolete by the passage of time, a circumstance that may be relevant in determining whether two representations are substantially related. In the case of an organizational client, general knowledge of the client's policies and practices ordinarily will not preclude a subsequent representation; on the other hand, knowledge of specific facts gained in a prior representation that are relevant to the matter in question ordinarily will preclude such a representation. A former client is not required to reveal the confidential information learned by the lawyer in order to establish a substantial risk that the lawyer has confidential information to use in the subsequent matter. A conclusion about the possession of such information may be based on the nature of the services the lawyer provided the former client and information that would in ordinary practice be learned by a lawyer providing such services. . .

[5] Paragraph (b) operates to disqualify the lawyer only when the lawyer involved has actual knowledge of information protected by Rules 1.6 and 1.9(c). Thus, if a lawyer while with one firm acquired no knowledge or information relating to a particular client of the firm, and that lawyer later joined another firm, neither the lawyer individually nor the second firm is disqualified from representing another client in the same or a related matter even though the interests of the two clients conflict. See Rule 1.10(b) for the restrictions on a firm once a lawyer has terminated association with the firm.

[6] Application of paragraph (b) depends on a situation's particular facts, aided by inferences, deductions or working presumptions that reasonably may be made about the way in which lawyers work together. A lawyer may have general access to files of all clients of a law firm and may regularly participate in discussions of their affairs; it should be inferred that such a lawyer in fact is privy to all information about all the firm's clients. In contrast, another lawyer may have access to the files of only a limited number of clients and participate in discussions of the affairs of no other clients; in the absence of information to the contrary, it should be inferred that such a lawyer in fact is privy to information about the clients actually served but not those of other clients. In such an inquiry, the burden of proof should rest upon the firm whose disqualification is sought. . .

[24] The Oklahoma Rules of Professional Conduct, Rule 1.9, 5 O.S. 2011 Ch.1, App. 3-A, comments, see note 23, supra.

[25] The Oklahoma Rules of Professional Conduct, Rule 1.9, 5 O.S. 2011 Ch.1, App. 3-A, comments, see note 23, supra.

[26] The Oklahoma Rules of Professional Conduct, Rule 1.9, 5 O.S. 2011 Ch.1, App. 3-A, comments, see note 22, supra.

[27] The Oklahoma Rules of Professional Conduct, Rule 1.9, 5 O.S. 2011 Ch.1, App. 3-A, comments, see note 23, supra.

[28] The Oklahoma Rules of Professional Conduct, Rule 1.9, 5 O.S. 2011 Ch.1, App. 3-A, comments, see note 23, supra.

[29] The Oklahoma Rules of Professional Conduct, Rule 1.9, 5 O.S. 2011 Ch.1, App. 3-A, comments, see note 23, supra.

[30] Amended Petition filed February 22, 2013, in the District Court of Rogers County, Case No. CJ-2012-200.

[31] Code of Judicial Conduct, 5 O.S. 2011 Ch. 1, App. 4, Rule 2.11 provides in pertinent part:

(A) A judge shall disqualify himself or herself in any proceeding in which the judge's impartiality might reasonably be questioned. . . .

 





 Citationizer© Summary of Documents Citing This Document
 
 
 
 Cite
 Name
 Level
 
 
 
 None Found.
 
 
 Citationizer: Table of Authority
 
 
 
 Cite
 Name
 Level
 
 
 
 Oklahoma Supreme Court Cases
 Cite
Name
Level

 1933 OK 26, 18 P.2d 1089, 162 Okla. 44, MIDLAND VALLEY RAILROAD CO. v. BARNES et al.
Discussed
 1966 OK 4, 417 P.2d 316, PEYTON v. McCASLIN
Discussed
 2002 OK 30, 51 P.3d 562, HAYES v. CENTRAL STATES ORTHOPEDIC SPECIALISTS, INC.
Cited
 2007 OK 78, 171 P.3d 899, ARKANSAS VALLEY STATE BANK v. PHILLIPS
Discussed at Length
 2008 OK 66, 195 P.3d 35, McQUEEN, RAINS & TRESCH, LLP v. CITGO PETROLEUM CORP.
Discussed
 1996 OK 124, 930 P.2d 183, 67 OBJ 3566, Piette v. Bradley & Leseberg
Cited
 2013 OK 20, 299 P.3d 477, MIAMI BUSINESS SERVICES, LLC v. DAVIS
Discussed
 2014 OK 87, 339 P.3d 866, BD. OF CTY. COMMISSIONERS v. ASSOC. OF CTY. COMMISSIONERS OF OKLA. SELF-INSUR. GROUP
Discussed
 1980 OK 96, 614 P.2d 45, State ex rel. Howard v. Oklahoma Corp. Commission
Discussed
 1999 OK 10, 977 P.2d 1084, 70 OBJ 592, Towne v. Hubbard
Discussed
Title 12. Civil Procedure
 Cite
Name
Level

 12 O.S. 953, Final Order Defined
Cited


 
 








 
 
 
 

 
 

 
 
 
 oscn
 
 EMAIL: webmaster@oscn.net
 Oklahoma Judicial Center
 2100 N Lincoln Blvd.
 Oklahoma City, OK 73105
 
 
 courts
 
 Supreme Court of Oklahoma
 Court of Criminal Appeals 
 Court of Civil Appeals
 District Courts
 
 
 
 decisions
 
 New Decisions
 Supreme Court of Oklahoma
 Court of Criminal Appeals
 Court of Civil Appeals
 
 
 
 programs
 
 The Sovereignty Symposium
 
 Alternative Dispute Resolution
 Early Settlement Mediation
 Children's Court Improvement Program (CIP)
 Judicial Nominating Commission
 Certified Courtroom Interpreters
 Certified Shorthand Reporters
 Accessibility ADA
 
 
 
 
 
 
 
 
 Contact Us
 Careers
 Accessibility ADA