OSCN Found Document:WHITEHEAD v. CORNERSTONE RX, LLC and HUENERGARDT

 

 
 WHITEHEAD v. CORNERSTONE RX, LLC and HUENERGARDT2026 OK CIV APP 16Case Number: 122899Decided: 05/07/2026Mandate Issued: 06/04/2026COURT OF CIVIL APPEALS OF THE STATE OF OKLAHOMA, DIVISION II
Cite as: 2026 OK CIV APP 16, __ P.3d __

 

LORA WHITEHEAD, as Personal Representative of the Estate of Kyle Whitehead, Deceased, and as Substitute Managing Member of CORNERSTONE RX, LLC, Plaintiff/Appellee,
vs.
CORNERSTONE RX, LLC; and GREGORY S. HUENERGARDT, as Managing Member of CORNERSTONE RX, LLC, Defendants/Appellants.

APPEAL FROM THE DISTRICT COURT OF
ELLIS COUNTY, OKLAHOMA

HONORABLE DONNA L. DIRICKSON, TRIAL JUDGE

AFFIRMED

Julia C. Rieman, Dustin E. Conner, April M. Davis, GUNGOLL, JACKSON, BOX & DEVOLL, P.C., Enid, Oklahoma, For Plaintiff/Appellee

Katresa J. Riffel, Matthew C. Russell, RIFFEL, RIFFEL & BENHAM, PLLC, Enid, Oklahoma, For Defendants/Appellants

STACIE L. HIXON, CHIEF JUDGE:

¶1 Defendants Cornerstone RX, LLC (Cornerstone) and Gregory S. Huenergardt appeal an order of the trial court disqualifying the law firm of Riffel, Riffel, and Benham, PLLC (Riffel Firm) from representing them in a suit filed by Lora Whitehead (Lora), as personal representative of the Estate of Kyle Whitehead (Estate). Huenergardt and decedent Kyle Whitehead (Whitehead) were equal members of Cornerstone. Cornerstone itself, as well as Huenergardt and Whitehead, were represented by attorney Craig Riffel. After Whitehead died, Estate alleged Huenergardt attempted to cut Estate out of Cornerstone and begin a new company set up by Riffel to continue Cornerstone's business. Whitehead's wife, Lora, filed suit on behalf of Estate against Huenergardt for breach of fiduciary duty and violation of the operating agreement and requested an accounting from Cornerstone.

¶2 After Riffel and other attorneys for the Riffel Firm entered their appearance on behalf of Huenergardt and Cornerstone, respectively, Estate moved to disqualify Riffel and the Riffel Firm from representing either in the pending litigation due to conflict of interest. Riffel withdrew. Following hearing, the trial court disqualified the Riffel Firm from further representation in the pending suit, finding an attorney-client relationship between Riffel and Whitehead, that the litigation involved a matter substantially related to Riffel's prior representation of Whitehead, and that the interests of the Riffel Firm's present client were adverse to Estate. On review of the record and the briefing on appeal, we affirm the trial court's Order of February 14, 2025, disqualifying the Riffel Firm from further representation in the underlying suit. 

BACKGROUND

¶3 Whitehead and Huenergardt were pharmacists who formed a limited liability company, Cornerstone, as an alleged buying group used to obtain favorable prices for pharmaceuticals.

¶4 Riffel represented Whitehead, Lora, and Huenergardt on personal or business matters apart from Cornerstone. He also represented Whitehead and Huenergardt in their formation of Cornerstone and served as Cornerstone counsel thereafter. According to Lora, Riffel was also working with Whitehead and Huenergardt to set up a new entity or group purchasing organization because one of Cornerstone's drug suppliers was not willing to do business with Cornerstone under its current structure. Before this was completed, Whitehead died in March 2023.

¶5 Lora is personal representative of Whitehead's Estate. She also contends that under the operating agreement, she has succeeded or will succeed to Whitehead's 50% interest in Cornerstone as a substitute member by terms of the operating agreement and testamentary disposition. 

¶6 Lora filed suit on behalf of Estate, asserting claims for breach of fiduciary duty and breach of the operating agreement against Huenergardt and a claim for an accounting against Cornerstone. Riffel moved to dismiss those claims on behalf of Cornerstone. Another attorney from the Riffel Firm, Matthew Russell, filed a Motion to Dismiss on behalf of Huenergardt. Thereafter, Estate moved to disqualify Riffel and the Riffel Firm. It asserted, among other things, that Riffel had currently and formerly represented Cornerstone as well as Whitehead in matters relating to the formation of Cornerstone, as well as the new entity, which was substantially related to the subject matter of Riffel's representation of Cornerstone and Huenergardt in Estate's suit.

¶7 In response, Cornerstone and Huenergardt collectively argued that the appropriate consideration was whether the Riffel Firm had represented Lora personally. Defendants did not dispute that Riffel had represented Lora, but contended the matters were not substantially related. 

¶8 The trial court conducted a hearing on the Motion to Disqualify on January 14, 2025. Lora and Riffel testified. Some of the testimony concerned Riffel's representation of Lora on unrelated matters, which Riffel argued during the hearing did not preclude representation of Cornerstone or Huenergardt. He also contended he did not have confidential information he or his firm could use against Estate in its dispute with Cornerstone or Huenergardt, negating any conflict. It was undisputed that he set up Cornerstone for Huenergardt and Whitehead and acted as Cornerstone's corporate counsel. Likewise, Riffel did not dispute that, prior to Whitehead's death, he and Huenergardt were looking to change the form of Cornerstone or establish a new entity to serve Cornerstone's business. 

¶9 The trial court explained at the hearing that the issue was not whether Riffel had previously represented Lora. Rather, the court explained:

Lora Whitehead is standing in the shoes, for lack of a better phraseology, of Kyle Whitehead because she is the personal representative of his estate at this time.

***

So if we back up and look at this case in a scenario of Greg and Kyle have worked with Craig . . . over the years and you've done some business things together and by the very fact that there's billing statements, he has continued to counsel Greg as part owner of [Cornerstone]. So if we look at this case as Kyle and Greg get into a tiff and have a disagreement and they need to sue each other, I don't think anybody in here would say well, Craig can decide which one of those two he wants to represent and the other one has to go get an attorney. That is a standard conflict of interest.

And any time--there's other type of case where at first an attorney is representing two or three or four parties, but when they become in conflict with each other, that attorney must bow out and cannot represent anyone. And that is the light in which this Court has viewed this case and is looking at the elements of the statements of Rule 1.9, which is a conflict of interest.

And I note that both sides kept talking to me about confidential information. I don't think it hinges on whether or not there's confidential information, but I do think it hinges on material information and there can be no doubt that Mr. Riffel has vast material information about the workings of [Cornerstone] based on his testimony that he gave here today. And he has continued to counsel Greg on issues that pertain to it going forward or possibly pertain to it being dissolved. I'm not sure. But again, that's what the lawsuit is going to be referencing.

So certainly Element 1, attorney/client relationship existed between the moving party and opposing counsel. No question. Mr. Riffel represented by his own statement Cornerstone and because Kyle and Greg were equal owners of that, there were times where communication with them about whatever we're gonna do with this entity going forward in the years and the planning that was made is going to be part of what Mr. Riffel knows.

The second element of this is the present litigation involved the matter that is substantially related to the subject of the movement [sic] prior representation. But when I look at the elements of this lawsuit, it has to do with breach of contract and fiduciary duties as it pertains to that entity and/or as it pertains to Greg individually. Mr. Riffel was intimately involved in both of those matters and has that information.

Element No. 3: The interest of the opposing counsel's present client are materially adverse to the movement. [sic]. Absolutely could be. Mr. Riffel being the knowledged attorney/expert in everything that has gone on by his testimony, wow! He knows a whole lot about this medical/pharmaceutical things. So he absolutely has inside--what I would call inside information about what Greg and Kyle thought about doing and how they approached this case and what they were going to do going forward and maybe ideas of how we can handle things differently of if this happens, then we might need to do this.

So this Court is very well-satisfied that there is a conflict with the Riffel Law Firm continuing to represent Cornerstone and/or Greg in this matter because the lawsuit concerns Greg, Cornerstone and Kyle's personal representative and that is absolutely material information that Mr. Riffel would have and you can't--there just can't be any away around fixing the knowledge that he has and the involvement that he has. And the billing state- ments . . . indicate that that has still been ongoing.

¶10 The trial court entered an Order on February 14, 2025, granting Estate's Motion to Disqualify the Riffel Firm, finding the existence of an attorney-client relationship; that the present litigation involves a matter substantially related to Estate's prior representation by Riffel; and the interests of the Riffel Firm's present client are adverse to the movant. Huenergardt and Cornerstone appeal.

STANDARD OF REVIEW

¶11 The grant of a motion to disqualify is immediately appealable as a final order because it affects the substantial rights of a party. Board of County Comm'rs v. Assoc. of County Commissioners of Okla. Self-Insured Group, 2021 OK 15, ¶ 9, 485 P.3d 234. When reviewing the order, we review the trial court's findings of fact for clear error and carefully examine de novo the trial court's application of ethical standards. Id. The standard for disqualifying counsel is whether real harm to the integrity of the judicial process is likely to result if counsel is not disqualified. Id. This is a high standard to meet, and the burden rests with the moving party to establish the likelihood of harm by a preponderance of the evidence. Id.

ANALYSIS

¶12 Defendants assert that the trial court erred by disqualifying the Riffel Firm based on an "erroneous finding of possession of material information alone," without finding Riffel possessed "confidential information." We disagree that this was the basis of the trial court's holding. The trial court was correct that the Riffel Firm's representation posed a "standard conflict of interest," between adverse clients for whom Riffel had served as counsel in the same or substantially related matters. That conflict, in turn, threatens the integrity of the judicial process, and supports disqualification. 

¶13 The Oklahoma Supreme Court recognizes that a party in a civil proceeding has a fundamental right to employ and be heard by counsel of his or her own choosing. However, this rule is not absolute.

A litigant's choice of counsel may be set aside under limited circumstances, where honoring the litigant's choice would threaten the integrity of the judicial process. This most often arises where an attorney's compliance with ethical standards of professional responsibility are challenged. It is this Court's nondelegable, constitutional responsibility to regulate both the practice and the ethics, licensure, and discipline of the practitioners of the law, and in doing so, to preserve public confidence in the bar and the judicial process. However, motions to disqualify counsel for failure to comply with the Rules of Professional Conduct are not to be used as procedural weapons. Disqualification is such a drastic measure that it should be invoked if, and only if, the Court is satisfied that real harm is likely to result.

Arkansas Valley State Bank v. Phillips, 2007 OK 78, ¶ 13, 171 P.3d 899.

¶14 A movant bears a heavy burden to show by a preponderance of the evidence that real harm to the integrity of the judicial process is likely to result if counsel is not disqualified. Id. at ¶ 25. The Oklahoma Supreme Court requires that when a party seeks disqualification, the trial court must hold an evidentiary hearing and make specific findings of fact in its order requiring or denying disqualification. Arkansas Valley, 2007 OK 78, at ¶ 8.

¶15 As a preliminary matter, because Riffel has withdrawn, we consider only whether the Riffel Firm is disqualified. While the primary representation appears to have been Craig Riffel's,

[w]hile lawyers are associated in a firm, none of them shall knowingly represent a client when any one of them practicing alone would be prohibited from doing so by Rules 1.7 or 1.9, unless the prohibition is based on a personal interest of the prohibited lawyer and does not represent a significant risk of materially limiting the representation of the client by the remaining lawyers in the firm.

Okla. Rule of Professional Conduct 1.10(a), 5 O.S.2021, Ch.1, App. 3-A. This matter does not concern a conflict based on Riffel's personal interest. Therefore, if Riffel would be disqualified based on conflict of interest between concurrent or former clients, the Riffel Firm is likewise.

¶16 Defendants argue the trial court was required to find Riffel possessed confidential information belonging to Whitehead or Estate before it could find a conflict. As they correctly note, the Oklahoma Supreme Court states in Arkansas Valley that

before the trial court can determine that an attorney should be disqualified based on a conflict of interest or improper possession of confidential information, it must hold an evidentiary hearing and make a specific factual finding in its order of disqualification that the attorney had knowledge of material and confidential information.

Id. at ¶ 8 (emphasis added). See also Miami Bus. Servs., LLC v. Davis, 2013 OK 20, ¶ 24, 299 P.3d 477. However, in McGee v. Amoco Prod. Co., 2019 OK 7, 438 P.3d 355, the Court appeared to distinguish cases explicitly involving possession of confidential information and other conflicts of interest. In that case, the alleged conflict of interest between two clients of counsel was described as "economic," as opposed to concerns about access to confidential information. Id. at ¶ 3.

¶17 As Arkansas Valley recognizes, the issue of disqualification "most arises where an attorney's compliance with ethical standards of professional responsibility are challenged." It concerns whether the conflict threatens the integrity of the judicial process. In this case, the parties relied on Oklahoma Rule of Professional Conduct 1.9(a) -- Conflicts of Interest: Duties to Former Clients. That rule states in part:

(a) A lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client gives informed consent, confirmed in writing.

***

(c) A lawyer who has formerly represented a client in a matter or whose present or former firm has formerly represented a client in a matter shall not thereafter:

(1) use information relating to the representation to the disadvantage of the former client except as these Rules would permit or require with respect to a client, or when the information has been generally known; or

(2) reveal information relating to the representation except as these Rules would permit or require with respect to a client.

Rule 1.9 does not define an impermissible conflict of interest by whether the lawyer is in possession of a former client's confidential information. The conflict of interest addressed in Rule 1.9(a) concerns a lawyer's duty of loyalty and resulting restrictions on representing clients adverse to one another in the same or substantially related matters. See e.g. Okla. Rule of Professional Conduct 1.7, 5 O.S.2021, Ch. 1, App-3, Comment 1 ("Loyalty and independent judgment are essential in the lawyer's relationship to a client. Concurrent conflicts of interest can arise from the lawyer's responsibility to another client, a former client or a third person or from the lawyer's own interest."); 

¶18 Under Rule 1.9, though the scope of the "matter" depends on the circumstances, generally, "[w]hen a lawyer has been directly involved in a specific transaction, subsequent representation of other clients with materially adverse interests in that transaction is clearly prohibited." Okla. Rule of Professional Responsibility 1.9, 5 O.S.2021, Ch. 1, App. 3-A, Comment 2. "The underlying question is whether the lawyer is so involved in the matter that the subsequent representation can be justly regarded as changing sides in the matter in question." Id. See also Board of Cnty. Commissioners of Harmon Cnty., 2021 OK 15, at ¶ 17.

¶19 Meanwhile,

[m]atters are "substantially related" for purposes of this Rule if they involve the same transaction or legal dispute or if there otherwise is a substantial risk that confidential factual information as would normally have been obtained in the prior representation would materially advance the client's position in the subsequent matter.

Id. at ¶ 18 (citing Rule 1.9, Comment 3) (emphasis added). In other words, while representation of one client against a former client in the same transaction or legal dispute is clearly prohibited without informed consent, whether other instances involve a "substantially related" matter and pose a conflict depends on the risk that confidential information obtained in the former representation will materially advance the client's position. 

¶20 Whitehead (or Estate), Huenergardt, and/or Cornerstone are materially adverse to one another in this suit, given Estate's allegations. 

¶21 Estate claims Huenergardt breached Cornerstone's operating agreement by allegedly absconding with business and depriving Estate of distributions or other financial benefit. Riffel apparently drafted that agreement while representing both Whitehead and Huenergardt. 

¶22 Further, the crux of Estate's claims is that Huenergardt allegedly set up a new business that serves Cornerstone's existing clients, depriving Estate of its interest or value in Cornerstone. Riffel represented Cornerstone in setting up this new entity and was paid by Cornerstone. Lora testified that discussions about changing this entity began prior to Whitehead's death, which Riffel did not dispute. He testified that one of the entities with whom Cornerstone contracted wanted it to change form for various legal reasons. He confirmed that he began discussing this change with Whitehead and Huenergardt before Whitehead's death, but actions were put on pause while Whitehead was sick. Riffel continued this work after Whitehead's death.

¶23 Estate's claims concern the establishment of a new entity. Riffel asserted he represented Cornerstone--not Huenergardt or Whitehead--in this transaction, and thus, there is no conflict. However, as the court also noted, Huenergardt and Whitehead were equal members and communicated with Riffel in that capacity. Riffel testified each communicated with Cornerstone together about creating this entity. Cornerstone can only act through its constituents; this includes communicating and seeking advice of counsel. See generally Seitsinger v. Pontiac, 1995 OK 29, ¶ 10, 894 P.2d 1077. The trial court concluded that an attorney-client relationship between Estate (or Whitehead) and opposing counsel existed with regard to that transaction, preventing Riffel or the Riffel Firm from now representing Huenergardt or Cornerstone against Whitehead. We find no clear error in the trial court's determination. 

CONCLUSION

¶24 We affirm the trial court's disqualification of the Riffel Firm from further representation of Cornerstone and Huenergardt in this matter based on conflict of interest. The Court passes no opinion on the validity of Estate's claims. However, the present matter involves matters substantially related to Riffel's prior representation of Whitehead, Huenergardt and/or Cornerstone, in which Cornerstone's two equal members are now clearly adverse. We find no clear error and affirm the trial court's Order of February 14, 2025, disqualifying the Riffel Firm.

¶25 AFFIRMED.

WISEMAN, P.J., and FISCHER, J., concur.

FOOTNOTES

Estate is the plaintiff in this matter. At the time of the hearing, Estate had not completed probate and nothing of record suggests Whitehead's shares in Cornerstone had been purchased or transferred. The trial court made it clear that its decision was not based on Lora's unrelated matters, but on Estate's interest in Cornerstone. Yet, Defendants failed to address disqualification in that context in their Brief-in-Chief at all. In their reply, Defendants do attempt to argue that Estate has blatantly misrepresented the law by suggesting Estate or Lora steps into Whitehead's shoes as a member of Cornerstone. Specifically, they argue that Estate or Lora could only be an assignee, not a member, under applicable Oklahoma law. While it is apparent from the pleadings that Lora contends either she or the Estate retain an interest in Cornerstone under the terms of the operating agreement, that issue is not before us. Estate's interest in Cornerstone following Whitehead's death is in dispute in the underlying action. The question here is whether the Riffel Firm has a conflict of interest in representing Cornerstone and one of its members against another member's Estate in this dispute.

Id. at ¶ 3.

Board of Cnty. Commissioners of Harmon Cnty., 2021 OK 15, at ¶ 15.

Id. "Nor could a lawyer who has represented multiple clients in a matter represent one of the clients against the others in the same or substantially related matter after a dispute arose among the clients in that matter, unless all affected clients give their informed consent." Id.

Whitehead as a basis for disqualification. We find no Oklahoma law which specifically addresses this issue. However, Riffel represented Whitehead during his lifetime in the matters at issue. Estate claims that Huenergardt has taken actions adverse to Whitehead's interest in Cornerstone arising from these same or related matters and is seeking to protect that interest. Were we to find Estate could not seek disqualification of the Riffel Firm in this circumstance, we would undermine the purpose of Rule 1.9 and Rule 1.7 to guard former and current clients from divided loyalties of counsel and potential use of their material and/or confidential information against them.

confidential information, its concerns about receipt of material information appear consistent with Rule 1.9(c). That rule prohibits a lawyer from using information related to representation of a former client to his disadvantage unless generally known or as permitted under the Rules of Professional Conduct. Given the scope of Riffel's representation of Whitehead, Huenergardt and/or Cornerstone, and the subject matter of Estate's suit, the trial court's concern for counsel's knowledge of information material to the suit is relevant and warranted.